**Pascual RENTERIA–MEDINA,**
**Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 19478.**

United States Court of Appeals
Ninth Circuit.

June 14, 1965.

Richard G. Tatus, San Diego, Cal., for appellant.

Manuel L. Real, U. S. Atty., John K. Van De Kamp, Asst. U. S. Atty., Chief, Crim. Section, Burt S. Pines, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before CHAMBERS and JERTBERG, Circuit Judges, and BOWEN, District Judge.

BOWEN, District Judge.

Appellant Pascual Renteria-Medina (hereinafter called Renteria or appellant) appeals from the jury's conviction and the Trial Court's judgment and five-year sentence of him on each of Counts 2 and 3 of the three-Count indictment charging appellant and his co-defendant (herein referred to as Felix) in Count 2 with smuggling into this country, and in Count 3 with knowingly receiving, concealing and facilitating the transportation and concealment of, approximately one ounce of heroin, in violation of Title 21 U.S.C. § 174, with concurrent execution of the two sentences. Count 1 of the same indictment charging appellant with aiding and abetting his co-defendant Felix in obtaining the latter's unlawful entry into the United States was dismissed.

The Trial Court had jurisdiction under said § 174, and under Title 18 U.S.C. § 3231. This Court has jurisdiction under Title 28 U.S.C. §§ 1291 and 1294.

Appellant on this appeal assigns two alleged errors: (1) that the evidence

854

used to convict the appellant was obtained by unreasonable search and seizure, and (2) that the court misled the jury by comment and failed to properly instruct on possession.

Immigration inspectors have authority without a warrant to interrogate, search or arrest aliens in pursuance of the inspectors' duty to detect and prevent unlawful immigration of aliens. 8 U.S.C.A. § 1357(a) and (c).

Appellant at the time of the trial was a Mexican national, then and for about four years a resident of Chula Vista, California, about five miles from Tijuana, Mexico. He had resided in this country 18 years during which time he said he had been employed principally as a truck driver, but due to his employer's recent economy measures, his truck driving employment was terminated and then he took up the business of collecting and selling wooden boxes. During his Chula Vista residence, he had almost daily visited Tijuana, Mexico where about as often he saw and associated with his codefendant Felix. After only a few months in that box business, he said he took a vacation and went to Central Mexico.

On January 23, 1964, while returning from his Mexican vacation, appellant happened to meet on Miguel Aleman Bridge in Mexicali, Mexico his friend Felix who joined appellant in appellant's car, and they drove to the home of appellant's cousins' family in Mexicali where they had breakfast and visited. Felix accepted appellant's invitation to return to Tijuana with appellant, and they, in appellant's car, began that trip stopping at a gasoline filling station in Mexicali, Mexico. Felix at the trial testified for the government and stated that when he got in appellant's car and later when they stopped at that filling station, he saw on appellant's car seat a cigarette package or box. He said that after they left the filling station, appellant suggested that, because appellant's car was not working very well, they, instead of going to Tijuana, drive from Mexicali, Mexico to Los Angeles, which they undertook to do. Felix further testified that they crossed the Mexican-California line; that while travelling appellant gave Felix that cigarette box and stated that it contained heroin; that later when they observed a patrol car trailing them, appellant requested Felix to put the cigarette box in his pocket which Felix did; and that from the time they left Mexico they made no stops and met no one, but drove continuously on northward until detained by the immigration inspectors at a check point, now to be more fully explained.

As an immigration roving checking unit, immigration patrol inspectors Farnan and Sweeney on said January 23d were in the course of their official duty as such inspectors working at or near an immigration check point on Highway 99 in California about 45 miles northward from the Mexican border at Mexicali. At that check point there is normally maintained a road block where northbound cars are halted and inspected by immigration inspectors, but, because of that day's high wind and the inspectors' fear that thereby the movable roadblock structures would be blown across the road and cause a traffic hazard, inspectors Farnan and Sweeney did not on that occasion block the highway. Instead, in order to facilitate their inspection work on that day, they in their official vehicle moved about on the highway and at times temporarily parked their vehicle so as to observe passing vehicles.

About noontime on the above stated date, the inspectors observed a northbound car passing the place where the inspectors were parked. Two men were in the car, clothing was hanging in the back section of the car, and inspector Farnan testified the car "fitted a pattern that we watch for". The inspectors decided to question the car's occupants respecting their citizenship, and in order to do so they drove their official vehicle after the car and by using the official vehicle's stop flash caused that northbound car to pull over and stop by the roadside.

Thereupon, both of the persons in that stopped car stepped out of it, walked back towards the inspectors' vehicle, were met by and frankly talked with the inspectors, and disclosed that one of them was appellant who was the driver of the stopped car and that the other was Felix who was a passenger in it.

Felix let inspector Farnan see a folder containing several things including Felix's I–186 border-crossing card. The wind conditions interfered with talking outside, so Farnan invited Felix to sit in the inspectors' patrol car. As Felix was being there questioned by inspector Farnan and while the latter was examining the contents of Felix's folder, Farnan learned from inspector Sweeney who had been talking with the appellant that luggage belonging to Felix was in the stopped car. This led Farnan to believe that Felix might be planning to violate his immigration status by overstaying in the United States the time allowed to him as a holder of an I–186 border-crossing card, and also to believe that Felix might be planning to seek employment while in the United States.

Pursuing that belief, Farnan continued to question Felix, and after a short time he surprised inspector Farnan by frankly stating he intended to overstay the time allowed him by his I–186 border pass. Thereupon, Farnan told Felix he had entered intending to violate his status and that the inspectors would have to return him to Mexico. As they talked, Farnan noticed that Felix was holding in his hand a small notebook which upon Farnan's request to see it Felix hesitatingly gave to Farnan who was looking for other documents, such as possibly a social security card or something, to show whether Felix had been working in this country and was then returning to his job here.

As Felix handed over that notebook, Farnan noticed that he was trembling, and as Farnan looked through the notebook once he observed that Felix was "near to hysteria", and upon Farnan's going through the notebook a second time, he saw in it a small package which he opened and found in it a powdery substance. Farnan then asked Felix if he was an addict and if that powdery substance was heroin, and Felix answered "yes" to both questions. Farnan estimated that only three to four minutes elapsed between the time Felix entered the inspectors' vehicle and the time of his discovering the heroin.

Thereupon, Farnan and Felix stepped out of the inspectors' vehicle and a search was made which further disclosed in Felix's pocket the above mentioned cigarette box containing a contraceptive with powdery contents later identified as heroin. A search was made of appellant also, but no narcotics were found on his person. Both Felix and appellant were then by the inspectors formally taken into custody, which as well as the search and seizure of the heroin was without a warrant.

While appellant and Felix were confined in the El Centro jail following their arrest, appellant wrote several incriminating notes to Felix urging him to tell the authorities that appellant had nothing to do with the charges and "tell them that I do not know nothing about nothing", and urging him to make other false statements favorable to appellant.

It seems clear to us, considering the fruits of inspector Farnan's inspection of Felix's effects and papers including the heroin taken from Felix's notebook and Felix's "yes" answers to Farnan's questions whether Felix was an addict and whether the powdery substance received from Felix's notebook was heroin, that Farnan had ample probable cause to believe a crime was then being committed by Felix, that thereupon Farnan was justified and acted reasonably in arresting Felix and in searching him and seizing from his person said cigarette box with its heroin contents, that the arrest of Felix was a lawful arrest, and that such search and seizure were incident to that lawful arrest. We conclude that such evidence so obtained by inspector Farnan from Felix which was used to convict appellant was not in fact or law

obtained by unreasonable search and seizure, and that on the contrary such evidence so obtained from Felix was obtained reasonably, and upon probable cause for the inspectors to believe that appellant was then committing a crime, and upon all the related evidence then before the Court was properly admitted against appellant at the trial as further indicated below.

Respecting appellant's first error assignment that the evidence [1] used to convict him was obtained by unreasonable search and seizure, we emphasize that the inspectors had before appellant was arrested intercepted the car in which appellant and Felix were travelling on a thoroughfare leading from the Mexican border northward through the Imperial Valley to the Los Angeles area, which was widely known for its large number of Mexican residents and extensive narcotics trade. The inspectors before stopping the car observed that those in it were Mexicans, and before appellant was arrested the inspectors knew that he was the driver of the car, that Felix was a passenger in it, that Felix had shown his border-crossing card Form I–186 to inspector Farnan and had told Farnan of his intention to overstay the time limit of his border-crossing card, that Farnan had

> "told him (Felix) he had entered the country illegally when he entered to violate his status. And I (Farnan) told him we were going to have to return him to Mexico. We talked, and he (Felix) indicated that he was familiar with our practice on these things, which is merely to return the Mexican National back to the Border and let them go back" (Parentheses added),

and that Felix had had on his person the narcotics just received by Farnan from Felix during the inspection.

It could have reasonably been believed by the inspectors, as it undoubtedly was, and as it probably would have been by any person of reasonable experience, prudence and caution, that appellant and Felix, travelling together in appellant's car, were collaborating in smuggling heroin from Mexico into this country for the Los Angeles area. Those officers applying ordinarily prudent and cautious consideration to the situation at hand probably believed, as they reasonably could have, that Felix by possessing the heroin and appellant by in his car transporting Felix, the possessor of the heroin before it was received from him by the inspectors, were and had been at all material times before the heroin left Felix's possession making common cause in smuggling the contraband into this country from Mexico and in furthering its movement to destination, and that when the car was intercepted and when the narcotics were received from Felix before appellant's arrest he was, with Felix, an active partner knowingly participating with Felix in committing the smuggling crime and, on the same smuggling trip, in further pursuing the uncompleted related plan of putting the heroin into the Los Angeles narcotics trade. Grier v. United States, 9 Cir., 1965, 345 F.2d 523 (decided May 11, 1965).

The inspectors, although looking for written information concerning Felix's citizenship and right to be in this country, were not required to blind their eyes and refuse to see the heroin given to Farnan among Felix's effects and papers shown to Farnan in response to the latter's proper request to see Felix's citizenship papers.

We hold that the narcotics evidence received from Felix and admitted at the trial over appellant's objection was properly admitted, and that appellant's first assigned error must be and is rejected.

■■ As to appellant's second assignment of error relating to the Trial Court's comment to the jury, we have carefully reviewed the record, and find that the only such comment made was innocuous and harmless, being obviously on-

---

1. The evidence relating to heroin received from Felix was admitted at the trial over appellant's objection. His motion to strike was denied.

ly a correct explanation of the state of the record rather than a comment on the credibility or weight of any evidence; and that respecting appellant's contention that the Trial Court failed to properly instruct the jury by omitting to define constructive possession, we believe that, from the instructions given, the jury was not left inadequately advised of the meaning of constructive possession. That is strongly indicated by the fact that appellant's counsel, Mr. Tatus, upon the Trial Court's concluding its instructions to the jury and before the jury retired to deliberate upon its verdict, was asked by the Trial Court "Mr. Tatus, do you have any objections to the instructions given, or to the omission of any instructions * *", and to that Mr. Tatus answered "I have no objections to the instructions given or omissions".

Additionally, we here point out that, respecting the second assigned error relating to the Trial Court's alleged failure to properly instruct the jury on the meaning of constructive possession, appellant has not complied with Rule 30, F.R.Cr.P., providing that a party may not assign as error any part of the instructions given or any omission therefrom

"unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection".

Appellant has failed to sustain his second assignment of error.

The action of the Trial Court is affirmed.

JERTBERG, Circuit Judge (concurring).

I concur in the result reached in the majority opinion.

Section 1357, Title 8 U.S.C., provides in pertinent part that any officer or employee of the Immigration Service has the power, without warrant—

"(1) to interrogate any alien or person believed to be an alien as to his right to be or to remain in the United States; * * *;

"(3) within a reasonable distance from any external boundary of the United States, to board and search for aliens * * * any * * * vehicle, * * *."

It was under such authority that the appellant and his passenger, Felix, were stopped and interrogated by the immigration inspectors. See Fernandez v. United States, 321 F.2d 283 (9th Cir., 1963). During the interrogation by the inspector of Felix concerning his status in the United States, Felix voluntarily handed to the immigration inspector a small notebook in which, among other things, was a small package which contained a powdery substance which Felix stated was heroin. In my view such facts constituted probable cause for the inspector to search the person of Felix. Such search revealed in Felix's pocket a cigarette box containing a powdery substance which was later identified as heroin. Such search was reasonable and based upon probable cause. In these circumstances the District Judge properly overruled appellant's objections to the introduction into evidence of the heroin obtained from Felix.