**Lazaro FERNANDEZ, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 18422.**

United States Court of Appeals Ninth Circuit.

July 22, 1963.

John E. Dearman and Ephraim Margolin, San Francisco, Cal., for appellant.

Francis C. Whelan, U. S. Atty., Thomas R. Sheridan, Phillip W. Johnson, Asst. U. S. Attys., Los Angeles, Cal., for appellee.

Before HAMLIN and DUNIWAY, Circuit Judges, and TAVARES, District Judge.

HAMLIN, Circuit Judge.

In Counts One and Two of an indictment filed in the United States District Court for the Southern District of California, appellant was charged with violations of 21 U.S.C. § 176a (smuggling into the United States from Mexico of ten and one-half pounds of marihuana and transportation and concealment of the same marihuana), and in Counts Three and Four with violations of 18 U.S.C. § 545 (smuggling into the United States from Mexico one hundred Phenobarbital tablets and transportation and concealment of said Phenobarbital tablets). Appellant pleaded guilty to Counts Three and Four, and went to trial before a jury on the charges contained in Counts One and Two. The jury convicted him on these two counts and he filed a timely appeal.

The facts show that appellant drove an automobile into the United States from Tijuana, Mexico, at approximately 5 p. m. on July 13, 1960. At about 7 p. m. on the same date, appellant's vehicle was stopped at the immigration and customs check point, about 18 miles north of Oceanside on Highway 101. This check point was about one quarter of a mile from the Pacific Ocean and 60 to 70 miles north of the Mexican border. When appellant stopped his automobile at the check point he was asked by an immigration officer where he was coming from. Appellant replied, "Mexico." He was asked if he was a citizen, and he replied that he was an alien. He was then directed to pull over to the side of the road for further questioning. When he reached the side of the road, two other officers who were officers of the Immigration and Naturalization Service and were also designated as Customs Inspectors

proceeded to question him as to his citizenship. As one of the officers walked around the automobile he smelled something under the hood, which was warm, and which he thought to be marihuana. The officer was familiar with the characteristic odor of marihuana. The appellant was asked to open the hood of his car; and after he had been prompted two or three times to do so, appellant went to the back of his car, obtained a tire tool and pried the hood of the car open. An immigration inspector testified that he had previously discovered an alien concealed under the hood of a car. When the hood was opened the officers saw five packages of marihuana wrapped in brown paper. Appellant was then arrested and placed in custody, and possession of his automobile was taken. Prior to trial a motion to suppress the marihuana on the ground that such evidence was obtained by means of an illegal search and seizure was denied by the district court.

Appellant makes the following specifications of error on this appeal:

1. Regulations sanctioning check points 70 miles within the United States are unconstitutional and illegal per se, and are unconstitutional and illegal as applied in this case.

2. The stopping of cars 70 miles within the confines of the United States constitutes unconstitutional and illegal search and is unlawful without probable cause.

3. Evidence discovered during a search following such illegal stopping of a car is "fruit of a poisoned tree", and must be suppressed.

We shall consider these contentions in the order listed.

 Section 1357 of Title 8, United States Code, provides in pertinent part as follows:

"(a) Any officer or employee of the Service authorized under regulations prescribed by the Attorney General shall have power without warrant—

"(1) to interrogate any alien or person believed to be an alien as to his right to be or to remain in the United States;

\* \* \* \* \* \*

"(3) within a *reasonable distance* from any external boundary of the United States, to board and search for aliens \* \* \* any \* \* \* vehicle, \* \* \*;

"(4) to make arrests for felonies which have been committed and which are cognizable under any law of the United States regulating the admission, exclusion, or expulsion of aliens, if he has reason to believe that the person so arrested is guilty of such felony \* \* \*.

\* \* \* \* \* \*

"(c) Any officer or employee of the Service authorized and designated under regulations prescribed by the Attorney General, \* \* \* shall have power to conduct a search, without warrant, of the person, and of the personal effects in the possession of any person seeking admission to the United States, concerning whom such officer or employee may have reasonable cause to suspect that grounds exist for exclusion from the United States under this chapter which would be disclosed by such search." [Emphasis supplied.]

This statute represents congressional recognition of the right of the United States to protect its own boundaries against the illegal entry of aliens and is, we think, clearly constitutional.[1] The question to be considered is whether the administrative regulation promulgated under this statute, defining "reasonable distance" as a distance "not exceeding 100 miles from any external boundary,"[2]

1. See Kelley v. United States, 197 F.2d 162 (5th Cir. 1952), in which the Fifth Circuit held a predecessor statute, 8 U.S.C. § 110, to be constitutional.

2. Immigration Regulation 287.1, 1953 U.S. Code Congressional and Administrative News, pp. 2617–18.

is unconstitutional as applied in the instant case.

■ As noted earlier, the check point at which appellant's car was stopped was about one quarter of a mile from the Pacific Ocean and 60 to 70 miles north of the Mexican border. The following evidence was introduced by the government concerning the location of this check point:

"At that time (when appellant was stopped) there were only two roads, Highways U.S. 101 and U.S. 395, connecting Los Angeles with the Mexican border. Los Angeles was a natural place to attract Mexican aliens, having the largest Mexican population of any city on the continent, with the exception of Mexico City itself. Furthermore, non-Mexican aliens also used the road in question, because Tijuana was a center for aliens of any nationality seeking to enter the United States illegally. Los Angeles was close to transportation facilities to all parts of the United States.

"Highways 101 and 395 carried all but a small fraction of one per cent of the northbound Tijuana-Los Angeles traffic, as there were mountain ranges that funnelled the traffic through those routes. The highways could be avoided only by taking some circuitous country roads which were rarely travelled. If the checkpoint had been located south of Highway U.S. 80, it could have been evaded by east-west traffic on that route, which runs parallel to the border.

"The checkpoint had good road shoulders which could be utilized by stopping vehicles with a minimum of hazard to persons using the highway.

"Only about four per cent of the total number of vehicles were directed to the side of the road for further questioning. It was not an arbitrary practice in which every person was stopped and detained. When traffic was light each person was stopped and asked where he was from and where he was going, being delayed thirty seconds or less, and when the traffic was heavy vehicles were not completely stopped but were waved through unless there was a reason to ask additional questions. In that case the vehicle was directed over to the shoulder.

"Many aliens who were illegally in the United States had been found at that checkpoint. It had been in operation at least since 31 years before appellant was arrested. There were at least a dozen of such checkpoints in operation along the border between the United States and Mexico."

We feel that these facts established that the regulation as applied in this case could be considered neither arbitrary nor capricious. In Contreras v. United States,[3] we in fact concluded that the stopping of a car at a check point 72 miles from the border on Highway 395 was proper for the purpose of establishing the nationality of the driver.[4] Further, after the vehicle was stopped, the officer, upon learning that appellant was an alien and had just come from Mexico, was clearly justified in ordering him to pull his car over to the side of the road for the purpose of further questioning.

■ The question remains whether the search conducted after the car had been stopped was illegal. It is well settled that a valid search of a vehicle moving on a public highway may be had without a warrant, if probable cause for

3. 291 F.2d 63 (9th Cir. 1961).

4. Appellant contends that he was stopped twice, the first time being at the border (when apparently no search was made) and that this fact also establishes the unreasonableness of the regulation. We do not feel that the fact that he may have been stopped twice, once at the border and next at a distance of 60 to 70 miles from the border, can be said to establish the unconstitutionality of the regulation as applied in this case.

the search exists, *i.e.*, facts sufficient to warrant a man of reasonable caution in the belief that an offense is being committed.[5] We feel that there clearly was probable cause for making the search in this case. An officer of the Immigration and Naturalization Service who was also designated as a Customs Inspector smelled a warm odor coming from under the hood of the car and recognized the odor to be that of marihuana. Whoever knowingly, with intent to defraud the United States, brings into the United States marihuana contrary to law has violated 21 U.S.C. § 176a. Under the provisions of 21 U.S.C. § 176a, an inference can be drawn from the unexplained possession of marihuana that the marihuana has been unlawfully imported.[6] Therefore, having smelled the odor of marihuana coming from the vehicle in appellant's possession, it was reasonable for the inspector to conclude that a crime was being committed.[7] Once, of course, the marihuana was found, it cannot be doubted that probable cause existed for appellant's arrest.[8]

The judgment of the district court is affirmed.

5. See, *e.g.*, Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); Husty v. United States, 282 U.S. 694, 51 S.Ct. 240, 75 L.Ed. 629 (1931).

6. Section 176a provides in pertinent part: "Whenever on trial for a violation of this subsection, the defendant is shown to have or to have had the marihuana in his possession, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains his possession to the satisfaction of the jury."

7. Appellants rely on Contreras v. United States, cited in footnote 3, in which we held that although it was proper to stop the vehicle in that case for the purpose of determinng the driver's nationality, the subsequent search of the vehicle was not based upon probable cause. The facts of that case, however, are clearly distinguishable from those of the instant one. There, the officer saw a plain paper sack covered by a leather jacket and bedspread on the front seat of the car. He

did not know what was in the sack, but the sack was seized and its contents found to be marihuana. We simply held that there was "nothing suspicious about a paper sack lying under a bedspread and jacket on the front seat of a car located seventy-two miles north of the Mexican-American border." Here the inspector was familiar with the odor of marihuana, smelled the odor of marihuana coming from under the hood of the car and thus had reasonable grounds for believing that appellant had possession of marihuana.

8. It could also be argued, although we do not so decide, that the odor of marihuana, coming as it did from under the hood of the vehicle in appellant's control, alone provided probable cause for the arrest of appellant. Once there is probable cause for an arrest without a warrant "it is immaterial that a search (without a warrant) precedes the arrest." (See Busby v. United States, 296 F.2d 328, 332 (9th Cir. 1961), cert. den., 369 U.S. 876, 82 S.Ct. 1147, 8 L.Ed. 278 (1962)).