**Arturo Duran MORALES, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**Jesus Ortiz VILLASENOR, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 23790.**

United States Court of Appeals
Fifth Circuit.

June 8, 1967.

Stanley Freed, Laredo, Tex., James R. Gillespie, San Antonio, Tex., for appellant.

James R. Gough, Asst. U. S. Atty., Houston, Tex., William L. Johnson, Jr., Asst. U. S. Atty., Fort Worth, Tex., Morton L. Susman, U. S. Atty., Ronald J. Blask, Asst. U. S. Atty., for appellee.

Before THORNBERRY, GOLDBERG and DYER, Circuit Judges.

THORNBERRY, Circuit Judge:

Appellants Morales and Villasenor were each convicted on all counts of a three-count indictment, charging respectively the smuggling, willful transportation and concealment, and failure to pay the transfer tax on thirteen pounds of marihuana,

in violation of 21 U.S.C. § 176a and 26 U.S.C. § 4744(a) (2). A third defendant, one Gonzaba, pled guilty to the tax count and testified for the government at the trial of Morales and Villasenor.

Appellants, by this appeal, complain that certain evidence, instrumental to their conviction, was obtained by means of an illegal search of Morales' automobile in violation of the Fourth Amendment to the United States Constitution. The government contends, however, that the actions complained of constituted a valid "border search."

 Customs agents of the United States are given broad statutory power to search for goods illegally introduced into this country. 19 U.S.C. §§ 482, 1581, 1582. Searches made pursuant to these statutes constitute a classification separate and distinct from ordinary searches, and their validity is measured by different criteria. They are not, of course, exempt from the constitutional test of "reasonableness." Thomas v. United States, 5th Cir. 1967, 372 F.2d 252; Marsh v. United States, 5th Cir. 1965, 344 F.2d 317. "Probable cause," however, is not required and mere "suspicion" alone is sufficient to meet the constitutional standard. Alexander v. United States, 9th Cir. 1966, 362 F.2d 379; Valadez v. United States, 5th Cir. 1966, 358 F.2d 721; Mansfield v. United States, 5th Cir. 1952, 308 F.2d 221.[1] As in all cases, a determination of whether the search complained of was indeed a border search and whether it was "reasonable," depends upon an examination of the factual context.

In the early evening of January 19, 1966, Gonzaba entered the United States from Mexico by automobile, crossing the International Bridge at Laredo, Texas. He was stopped, questioned at the customs station, and sent to the secondary inspection area. Further questioning revealed that the automobile was not Gonzaba's but had been borrowed from a friend in San Antonio, Gonzaba's home town. Gonzaba stated that he had been in Mexico two or three days, visiting his girl friend. He had no luggage, but stated that he had stayed at a motel, the name of which he could not remember. Gonzaba was searched, and among his belongings was found a ticket from a San Antonio pawn shop in the amount of $9.60. The car, including the trunk, was also searched in a cursory manner. Gonzaba was then released. The car was not followed, although the searching agent testified that his suspicions had been aroused.

Shortly thereafter, appellant Morales crossed the bridge, coming from Mexico on foot. The agent who had questioned Gonzaba detained Morales and took him

---

1. The statutory standard is as follows:

19 U.S.C. § 482. *Search of vehicles and persons*

Any of the officers or persons authorized to board or search vessels may stop, search, and examine, as well without as within their respective districts, any vehicle, beast, or person, on which or whom he or they shall suspect there is merchandise which is subject to duty, or shall have been introduced into the United States in any manner contrary to law, whether by the person in possession or charge, or by, in, or upon such vehicle or breast, or otherwise, and to search any trunk or envelope, wherever found, in which he may have a reasonable cause to suspect there is merchandise which was imported contrary to law * * *.

In Alexander v. United States, supra, the court said:

In conferring upon Customs officers such broad authority, circumscribed only by Constitutional limitations of the Fourth Amendment, the Congress has in effect declared that a search which would be "unreasonable" within the meaning of the Fourth Amendment, if conducted by police officers in the ordinary case, would be a reasonable search if conducted by Customs officials in lawful pursuit of unlawful imports. Judicial recognition of this distinction has given rise to the term "border search", in order to distinguish official searches which are reasonable because made solely in the enforcement of customs laws from other official searches made in connection with general law enforcement.

Id. at 381–382.

to the secondary inspection station where he was searched. In examining Morales' personal effects, the agent found a receipt for a $9.60 payment of a traffic violation. He also found in Morales' wallet a draft card bearing Gonzaba's name. On being questioned, however, Morales denied knowing Gonzaba. Thereupon, the agent notified his superior. Two agents were called in, briefed on the situation, and instructed to follow Morales when he left the bridge.

Morales, under surveillance, left the customs office and followed a circuitous route on foot until he was picked up by two persons in the automobile that Gonzaba had driven across the bridge. After the car had traveled a short distance, the agents stopped it. The occupants, Morales, Gonzaba, and Villasenor, were ordered out of the car and were searched for weapons. The occupants and the car were then taken back to the bridge customs station. A subsequent search of the car revealed the thirteen pounds of marihuana hidden in a spare tire in the trunk.

■ Appellants vigorously urge that the search which revealed the contraband marihuana cannot be considered a border search because of the prior examination of the car that took place when Gonzaba originally crossed the bridge. With this contention we cannot agree. The job of policing our international borders is indeed a difficult one, a fact the courts have recognized in giving the statutory powers of our customs agents the broadest interpretation compatible with constitutional principles. See King v. United States, 9th Cir. 1965, 348 F.2d 814; United States v. Rodriquez, S.D.Tex.1960, 195 F.Supp. 513, aff'd. 1961, 292 F.2d 709. It would be clearly contrary to the policies that justify our border search laws to hold that once a person or vehicle has been examined, any further search must be based upon probable cause even where, as here, facts giving rise to a reasonable suspicion

come to light subsequent to the initial search. Cf. Thomas v. United States, supra; Jones v. United States, 9th Cir. 1963, 326 F.2d 124 (concurring opinion); United States v. Rodriquez, supra. Such a holding would throw an impediment in the path of customs officers similar to those that the courts have rejected in holding that border searches cannot be restricted to the exact time or place of entry. E. g., Leeks v. United States, 9th Cir. 1966, 356 F.2d 470; Murgia v. United States, 9th Cir. 1960, 285 F.2d 14. We hold that in the factual situation before us, neither the initial examination of the automobile at the border, nor any other attendant circumstance removes the official conduct from classification as a valid border search. We also conclude that the facts upon which the agents acted gave rise to "a reasonable cause to suspect" that appellants might be in possession of goods "which [were] * * * introduced into the United States in [a] * * * manner contrary to law." 19 U.S.C. § 482.

■ Appellant Villasenor, having not been a party to the events that gave rise to the suspicion upon which the agents acted, raises the contention that his arrest at the time the car was stopped was illegal. He argues further that the subsequent search was incident to his arrest and that therefore the marihuana found in the search was inadmissible against him. Even assuming, for the sake of argument, that Villasenor's arrest was illegal, the conclusion reached by appellant does not follow. We have held that the search which disclosed the marihuana was a valid border search. It was not merely incidental to, and its validity is independent of, the arrests of Villasenor, Gonzaba, and Morales. Therefore, the admissibility of the evidence derived therefrom does not stand or fall upon the question of the legality of the arrests.

Finding the other points raised by appellants to be without merit, we affirm.