Gene **DUPREZ**, Defendant-Appellant,

v.

**UNITED STATES of America**,
Plaintiff-Appellee.

No. 25756.

United States Court of Appeals,
Ninth Circuit.

Dec. 10, 1970.

George H. Chula, Santa Ana, Cal., for defendant-appellant.

Harry D. Steward, U. S. Atty., Shelby R. Gott, Asst. U. S. Atty., San Diego, Cal., for plaintiff-appellee.

Before BARNES and KOELSCH, Circuit Judges, and BYRNE,* District Judge.

BYRNE, District Judge:

On March 26, 1969, at approximately 2:30 A.M., Cecil G. Sargent, Jr., an immigration patrol inspector for the United States Immigration and Naturalization Service, was on duty at his checkpoint station located on Highway 395, sixty-seven to seventy-seven miles from the Mexican border. As a border patrolman it was the duty of Sargent to determine alienage or citizenship of persons suspected of being in the United States illegally. Also, as is true of all such patrolmen, it was Sargent's duty as a deputy customs inspector, to curb any violations of the narcotic laws of the United States which might come under his observation.

At this time, a motor vehicle approached the well lighted inspection station. It first appeared to slow down; then as it came closer to the station, its speed increased to thirty-five to forty miles per hour and it proceeded through the checkpoint. The vehicle was identified by Sargent as a brown pickup truck with a camper.

After the truck had been driven through the checkpoint, Sargent and his partner, Howard Dobbs, who at this point had been sitting in the "chase vehicle," pursued the fleeing truck. The two officers followed the vehicle for approximately four miles. Both vehicles went off the road and came to a stop. During the chase, the driver of the truck took evasive action by repeatedly swerving from one lane to the other, and also ignored the flashing red light and blaring siren of the pursuing vehicle.

When the camper had been driven through the checkpoint, Sargent was able to observe the driver and a passenger. The lighting at the checkpoint was such that Sargent was able to see the driver clearly. According to the testi-

---

* Honorable William M. Byrne, United States District Judge, Los Angeles, California, sitting by designation.

mony of the border patrolman, the driver had long hair, a full beard, a ring on his left finger, and wore a brown knitted watch cap and a blue-gray jacket. Sargent was unable to see the passenger with any clarity.

Immediately after the two vehicles came to a stop, the driver left the truck, ignored the officers' orders to halt, and fled into the night. When the driver escaped, he crossed directly into the lights of the chase vehicle. Sargent testified that he wore white pants and a bluish-gray jacket. The officer testified the driver was approximately six feet tall and weighed 170 to 180 pounds.

As the passenger alighted from the camper, she kicked a grocery bag to the ground. As a result of the kick, "a clear plastic bag * * * and a partially used brick of marijuana" fell out of the bag. The passenger later identified as Cheryl Fleming, the appellant's co-defendant, was placed under arrest and put in the patrol car. The officers then returned to the fallen packages and searched the vehicle where they discovered an additional fifteen packages of marijuana.

At about noon, the same day, Sargent was notified that the Elsinore Police Department was holding a suspect who fit the description of the driver who had driven through his checkpoint that morning. Sargent identified the suspect, now the appellant, as the driver of the camper, and he was delivered to the Federal authorities.

The Federal Grand Jury for the Southern District of California returned a one-count indictment charging the appellant and Cheryl Fleming with intent to defraud the United States by knowingly concealing and facilitating the concealment of forty-six pounds of marijuana which the defendants knew had been imported into the United States contrary to law.

The defendants were jointly tried by jury. Fleming's motion for a directed verdict of acquittal was granted. Duprez was convicted and filed a timely appeal.

Appellant argues that secondary roadblocks over 75 miles inside the national border by immigration-customs agents violate the mandate of the Fourth Amendment against unreasonable search and seizure. The thrust of his argument is that the checkpoint in question is not protected by the "unique 'border search power' given to customs and immigration officers at the international border and within the immediate areas." Appellant's argument is pointless as no one is claiming that this was a "border search."

The primary function of a checkpoint is investigating and apprehending aliens who may have entered the United States illegally. The right to do so is provided for in Title 8, U.S.C. § 1357. This Court has repeatedly approved the right to stop and investigate vehicles for concealed aliens without a showing of probable cause. Fernandez v. United States, 321 F.2d 283 (CA 9, 1963); Fumagalli v. United States, 429 F.2d 1011 (CA 9, 1970).

Here the officers were not only authorized to stop and search the camper truck to ascertain if there were any aliens present, but certainly probable cause for the search existed when we consider the evasive action and flight of the appellant, and the marijuana which was kicked from the vehicle.

The appellant contends that the only evidence connecting him with the offense is his fingerprint on a bottle seized in the "unlawful search" of the camper truck. As we have pointed out above, the search of the vehicle was not an "unlawful search". It must also be noted that the testimony of Officer Sargent identified appellant as the driver of the vehicle in which the marijuana was found.

Duprez also argues that there is no evidence in the record that he had knowledge of the unlawful importation of the seized marijuana. The trial court did not instruct the jury on the presumption which has been declared invalid in Leary v. United States, 395 U.S. 6,

**1278**

89 S.Ct. 1532, 23 L.Ed.2d 57 (1969), and the issue of knowledge of illegal importation, as in the case of any other fact, is for the jury to decide. In addition to the circumstantial evidence and inferences the jury could draw therefrom, the government called two expert witnesses who testified the marijuana came from Mexico.

Viewing the evidence in the light most favorable to the government, as we must (McClain v. United States, 417 F.2d 489 (CA 9, 1969); Pederson v. United States, 392 F.2d 41 (CA 9, 1968); Lustiger v. United States, 386 F.2d 132 (CA 9, 1967)), the evidence of knowledge was ample.

There is no merit to the other assertions of the appellant.

Affirmed.