**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Michael Walter MARKHAM, Defendant-
Appellant.**

**No. 26720.**

United States Court of Appeals,
Ninth Circuit.

April 12, 1971.

Lars Pedersen, Tucson, Ariz. (argued), for defendant-appellant.

Stanley L. Patchell (argued), Richard K. Burke, U. S. Atty., Ann Bowen, Asst. U. S. Atty., Tucson, Ariz., for plaintiff-appellee.

Before HAMLIN, DUNIWAY and WRIGHT, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

Michael Walter Markham appeals his conviction for transportation and concealment of 280 pounds of marijuana in violation of 21 U.S.C. § 176a. On appeal, he contends that the marijuana in question was secured by federal agents as the result of an illegal search and seizure in violation of his rights under the Fourth Amendment. We disagree and affirm.

## I. THE OPERATIVE FACTS.

At 1:30 a. m. on March 7, 1970, two Douglas, Arizona, police officers observed a yellow 1969 Dodge driving along a dirt road (see Appendix A) which parallels Pan American Avenue about four blocks from the Mexican border. The driver (not the appellant herein) was the sole occupant.

The car proceeded north on the dirt road to Pan American Avenue, then proceeded north and made a right turn at 13th Street, another right turn at G Street and a third right turn at 12th Street. The car then turned left, back onto Pan American Avenue, and headed south toward the border.

Police surveillance continued until the car turned right at 9th Street. A deputy sheriff stationed there was in radio contact with the city police and agreed to continue the surveillance. The officers were reluctant to follow the vehicle down 9th Street because it was a dead end street with few dwellings and they

feared their presence would be noted. There was a period of about ten minutes when the car was somewhere along 9th Street outside the view of the police.

The area between 9th Street and the border is essentially unoccupied open desert except for offices of Phelps-Dodge Company and some 10 to 15 residences occupied by executives of Phelps-Dodge. After the car turned down 9th, the city police officers drove to the area of the dirt road where they could observe the open area between 9th and the border. From this point they were able to verify that the car did not leave 9th and drive toward the border. After about 10 minutes the officers, still stationed near the dirt road, received a radio call from the deputy sheriff who had followed the Dodge a short distance along 9th Street. The deputy sheriff said that the Dodge was on its way out, toward Pan American Avenue, and that it now had several persons in it. The officers immediately drove back to the intersection of Pan American and 9th, where they intercepted the Dodge. They saw that the car now had six male occupants and that it appeared even more heavily laden than the number of occupants alone would indicate. The driver of the car was seen to be the same person who had been driving, with no passengers, when the car entered 9th Street.

The city police stopped the car shortly after it entered Highway 80. While checking the driver's license and registration, they saw a large burlap bag situated in open view in the back seat. Suspecting marijuana, they called U. S. Customs Agent Richard Swindler and detained the car pending his arrival about 15 minutes later.

Swindler ordered the six occupants out of the car, reached in and got the bag. Upon opening it he discovered what he believed to be marijuana and placed all six under arrest. A further search of the vehicle disclosed the remainder of the marijuana in the interior of the car and the trunk.

## II. THE SEARCH AND SEIZURE QUESTION.

Markham now argues that the marijuana was improperly seized as the result of an illegal search without warrant or probable cause. Primary reliance is placed upon our recent decision in United States v. Kandlis, 432 F.2d 132 (9th Cir. 1970).

We believe that this case is factually distinguishable from *Kandlis* and that *Kandlis* is not controlling as to the existence or lack of probable cause herein. We need not, however, deal with that contention since this case involved a permissible border search under our subsequent decision in United States v. Weil, 432 F.2d 1320 (9th Cir. 1970), cert. denied, 401 U.S. 947, 91 S.Ct. 933, 28 L. Ed.2d 230 (1971).

As for *Kandlis*, we need only point out that the government there conceded that a border search was not involved and relied solely upon probable cause. No such concession has been made here. Rather, the government urges with some vigor that this case falls within the border search rules of *Weil*.

In *Weil*, the car crossed the border "clean", with the driver as the sole occupant. It was thereafter seen emerging from "Puerto Blanco Drive" with an additional passenger. The customs agent subsequently stopped the car because he "felt that they had picked up something on Puerto Blanco Drive and one person had illegally entered the United States." *Id.* at 1322. While the search which subsequently revealed marijuana did not physically take place at the border, we held that this constituted a border search since that term is "merely the courts' shorthand way of defining the limitation that the Fourth Amendment imposes upon the right of customs agents to search without probable cause." *Id.* at 1323.

Therefore, "if customs agents are reasonably certain that parcels have been (a) smuggled across the border and (b) placed in a vehicle, whether the vehicle has itself crossed the border or not,

they may stop and search the vehicle. Similarly, if the agents are reasonably certain that a person has crossed the border illegally, and has then entered a vehicle on this side of the border, we think that they may stop and search the vehicle and person. They can assume that he may have brought something with him." *Id.*

The circumstances which faced the police officers here is demonstrated by the testimony of Officer Lehman. The car was initially observed during the early morning hours in an area near the border where there were neither homes nor commercial establishments. The only structures around the "dirt road" where the car was first seen were some corrals which are part of the border facilities. Their suspicion thus aroused, they followed the car as it traveled a circuitous route which ultimately led to a sparsely populated dead end street. The city police were well acquainted with this area and Officer Lehman testified that numerous arrests had been made there involving illegal entry of aliens as well as smuggling of narcotics.

The suspicions of the police were further enhanced when the car emerged from this area with five additional occupants. From these facts, Officer Lehman said that he "was going to stop the vehicle once it left town, started out of town." He said he was "certain it had made a marijuana smuggle or an alien smuggle" and that, in his mind, "there was no doubt it had made one of the two."

■ After the initial detention by the Douglas police, Agent Swindler was called and the details of the police observation passed on to him. Swindler, a customs agent of some experience in Douglas, testified that he knew the 9th Street area to be one where there had previously been "heavy traffic" in both narcotics and illegal aliens. Under these circumstances, he was justified in being "reasonably certain" that someone or something had entered the country illegally and therefore proceeded to conduct a valid search of the vehicle.

This court shares to some extent the experience of the border authorities with reference to this method of smuggling marijuana and narcotic drugs across the border. In United States v. Ardle, 435 F.2d 861 (9th Cir. 1970), we saw a similar factual pattern. The car crossed the border "clean", was later seen with an additional passenger, and subsequently found to contain contraband. We there observed that "[t]his type of maneuver is not uncommon in the business of narcotic smuggling." *Id.* at 863.

In addition to *Ardle, Kandlis* and *Weil,* we have seen variations on this same method in United States v. Elder, 425 F.2d 1002 (9th Cir. 1970) and United States v. Oswald, 441 F.2d 44 (9th Cir. 1971).

■ In short, our experience with these cases is now such that we can say without doubt that customs agents can be reasonably certain that a violation has occurred when they observe (or are informed) that an automobile in the general area of the border has gained additional passengers who, they have reason to believe, have crossed the border illegally and may well be carrying contraband.

Without merit is Markham's contention that this was not a border search because the customs agent had no knowledge as to whether the car had crossed the border. As we said in *Weil,* "the right of customs agents to search a vehicle without probable cause is not confined to vehicles that have crossed the border." 432 F.2d at 1323. While it later appeared that this vehicle had in fact crossed the border earlier in the day, that fact is of no moment.

The power of customs agents to conduct searches under these *circumstances* is based upon their reasonable certainty that some other person or persons have crossed the border illegally, may be carrying contraband, and that either they or the contraband are now in the vehicle. Whether the car itself crosses the border or merely drives down to the border area to make the pick-up has no

effect on their power which stems from illegal entry of goods or persons. *See* United States v. Glaziou, 402 F.2d 8 (2d Cir. 1968); United States v. McGlone, 394 F.2d 75 (4th Cir. 1968).

## III. CONCLUSIONS.

Markham's other point on appeal deals with the chain of testimony from the customs agents to a government chemist who established that the seized substance was in fact marijuana. The objection here is that there is a disparity in the testimony relating to the number of samples sent to the chemist for analysis.

Although there were objections to this testimony on other grounds, the objection made here was not offered to the trial court. There was a general objection based upon "foundation" but that objection did not specify the error alleged before us. Absent clear error, the admission of an exhibit will not be considered reversible on appeal where there has been no objection at trial or where the basis of the objection at trial is abandoned on appeal and a new basis alleged for the first time. United States v. Johnson, 421 F.2d 1342, 1343 (9th Cir. 1970).

Affirmed.