**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Condrado ALMEIDA-SANCHEZ,**
**Defendant-Appellant.**

**No. 26514.**

United States Court of Appeals,
Ninth Circuit.

Sept. 27, 1971.

Rehearing In Banc Denied
Feb. 3, 1972.

---

Browning, Circuit Judge, dissented and filed an opinion.

James A. Chanoux, San Diego, Cal., for defendant-appellant.

Harry D. Steward, U. S. Atty., Robert H. Filsinger, Shelby R. Gott, Asst. U. S. Attys., San Diego, Cal., for plaintiff-appellee.

Before BROWNING, CARTER and TRASK, Circuit Judges.

PER CURIAM:

Almeida-Sanchez appeals from a conviction for knowingly receiving, concealing and facilitating the transportation and concealment of approximately 161 pounds of illegally imported marijuana. 21 U.S.C. § 176a. His sole contention is that the district court erroneously denied a motion to suppress evidence, marijuana, found in a search of his car, without a warrant. We affirm.

Appellant's vehicle was stopped by two officers of the Immigration and Naturalization Service who were conducting a roving check for aliens some 50 miles north of the Mexican border on Highway 78. One of the officers looked under the rear seat of the automobile and discovered packages that he believed to be marijuana. A subsequent search revealed many other packages of marijuana distributed throughout various parts of the vehicle. While the officer himself had never found aliens under the rear seat of an automobile, he had heard of several instances in which aliens had been concealed there. The officers had just received an information bulletin from the headquarters of the Border Patrol stating that aliens entering the United States illegally, had recently adopted the practice of sitting up directly behind the back seat of an automobile with their feet and legs doubled up under the rear seat cushion; springs would be removed from the rear seat to provide space for their legs.

This court has approved the right of Immigration Officers acting under 8 U.S.C. § 1357, 8 C.F.R. § 287.1, to stop and investigate vehicles for concealed aliens within a hundred air miles from any external boundary without a

showing of probable cause. Duprez v. United States (9 Cir. 1970) 435 F.2d 1276; Fumagalli v. United States (9 Cir. 1970) 429 F.2d 1011; Miranda v. United States (9 Cir. 1970) 426 F.2d 283. A stop and search effected under 8 U.S.C. § 1357 is not a "border search" and does not depend for its validity upon the law of border searches. *See* Duprez v. United States, *supra.*

■ Since the initial search under the rear seat of appellant's automobile was confined to a place where an alien might be concealed, the search was reasonable in scope. *See* Miranda v. United States, *supra.*

Affirmed.

1. 8 U.S.C. § 1357(a) and (c):
"(a) Any officer or employee of the Service authorized under regulations prescribed by the Attorney General shall have power without warrant—
(1) to interrogate any alien or person believed to be an alien as to his right to be or to remain in the United States;
(2) to arrest any alien who in his presence or view is entering or attempting to enter the United States in violation of any law or regulation made in pursuance of law regulating the admission, exclusion, or expulsion of aliens, or to arrest any alien in the United States, if he has reason to believe that the alien so arrested is in the United States in violation of any such law or regulation and is likely to escape before a warrant can be obtained for his arrest, but the alien arrested shall be taken without unnecessary delay for examination before an officer of the Service having authority to examine aliens as to their right to enter or remain in the United States;
(3) within a reasonable distance from any external boundary of the United States, to board and search for aliens any vessel within the territorial waters of the United States and any railway car, aircraft, conveyance, or vehicle, and within a distance of twenty-five miles from any such external boundary to have access to private lands, but not dwellings, for the purpose of patrolling the border to prevent the illegal entry of aliens into the United States; and
(4) to make arrests for felonies which have been committed and which are cognizable under any law of the United States regulating the admission, exclu-

BROWNING, Circuit Judge (dissenting):

The majority holds that an Immigration and Naturalization officer checking for aliens illegally in this country may stop and search any automobile within one hundred air miles of an external boundary of the United States, at random, without a warrant, and without cause. The majority relies upon prior decisions of this court; and these, in turn, find authority for such conduct in a statute [1] and an administrative regulation.[2]

Of course, prior decisions of other panels of the court bind this panel, Etcheverry v. United States, 320 F.2d 873,

sion, or expulsion of aliens, if he has reason to believe that the person so arrested is guilty of such felony and if there is likelihood of the person escaping before a warrant can be obtained for his arrest, but the person arrested shall be taken without unnecessary delay before the nearest available officer empowered to commit persons charged with offenses against the laws of the United States. As such employee shall also have the power to execute any warrant or other process issued by an officer under any law regulating the admission, exclusion, or expulsion of aliens.
    *    *    *    *    *
(c) Any officer or employee of the Service authorized and designated under regulations prescribed by the Attorney General, whether individually or as one of a class, shall have power to conduct a search, without warrant, of the person and of the personal effects in the possession of any person seeking admission to the United States, concerning whom such officer or employee may have reasonable cause to suspect that grounds exist for exclusion from the United States under this chapter which would be disclosed by such search."

2. 8 C.F.R. § 287.1(a) (2) reads:
"*Reasonable distance.* The term 'reasonable distance,' as used in section 287 (a) (3) of the Act, means within 100 air miles from any external boundary of the United States or any shorter distance which may be fixed by the district director, or, so far as the power to board and search aircraft is concerned, any distance fixed pursuant to paragraph (b) of this section."

874 (9th Cir. 1963), but the decisions relied upon by the majority are so clearly at odds with the requirements of the Fourth Amendment that they should be overruled.

## I

As a general rule, to satisfy the Fourth Amendment, a search and seizure must be based upon probable cause and must be authorized by a warrant issued by a judicial officer. An authorized officer may stop and search an automobile on a public highway without a warrant, however, because a moving automobile would disappear before a warrant could be obtained. But, to conduct a constitutional search, the officer must have probable cause to believe the vehicle is carrying contraband; nothing in the mobility of the automobile justifies an intrusion upon personal privacy at the whim or on the unsupported hunch of a government agent. Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); Dyke v. Taylor Implement Co., 391 U.S. 216, 221, 88 S.Ct. 1472, 20 L.Ed. 2d 538 (1968); Carroll v. United States, 267 U.S. 132, 153–154, 45 S.Ct. 280, 69 L.Ed. 543 (1925).

There is an exception to the probable cause requirement applicable to "border searches" of persons and vehicles.[3] The exception is recognized in the following passage in Carroll v. United States, *supra*, 267 U.S. at 153–154, 45 S.Ct. at 285:

"Having thus established that contraband goods concealed and illegally transported in an automobile or other vehicle may be searched for without a warrant, we come now to consider under what circumstances such a search may be made. It would be intolerable and unreasonable if a prohibition agent was authorized to stop every automobile on the chance of finding liquor, and thus subject all persons lawfully using the highways to the inconvenience and indignity of such a search. *Travelers may be so stopped in crossing an international boundary because of national self-protection reasonably requiring one entering the country to identify himself as entitled to come in, and his belongings as effects which may be lawfully brought in.* But those lawfully within the country, entitled to use the public highways, have a right to free passage without interruption or search unless there is known to a competent official authorized to search, probable cause for believing that their vehicles are carrying contraband or illegal merchandise \* \* \*" (emphasis added.[4]

Conceptually, as *Carroll* suggests the "border search" exception rests upon the inherent right of sovereignty to protect its territorial integrity against intrusion of unauthorized persons or things. *See also* United States v. Weil, 432 F.2d 1320, 1323 (9th Cir. 1970); Alexander v. United States, 362 F.2d 379, 382 (9th Cir. 1966); Fernandez v. United States, 321 F.2d 283, 285 (9th Cir. 1963); Witt v. United States, 287 F.2d 389, 391 (9th Cir. 1961). Practically, it is justified by "the peculiar and difficult law enforcement problems that necessarily are presented by the effective policing of our extensive national boundaries." King v. United States, 348 F.2d 814, 818 (9th Cir. 1965). *See also* United States v. Glaziou, 402 F.2d 8, 12 (2d Cir. 1968); Morales v. United States, 378 F.2d 187, 189 (5th Cir. 1967).

The "border search" exception to the probable cause requirement can extend no further than these conceptual and practical considerations that justify its existence. And since the exception is in derogation of normal Fourth Amendment principles, it must be narrowly construed.

Because the power to conduct a border search without probable cause "stems from illegal entry of goods or persons,"

---

3. *See generally* 77 Yale L.J. 1007 (1968); 10 Ariz.L.Rev. 456 (1968); 3 St. Mary's L.J. 87 (1971).

4. *See also* Boyd v. United States, 116 U.S. 616, 623, 6 S.Ct. 524, 29 L.Ed. 746 (1886).

United States v. Markham, 440 F.2d 1119, 1123 (9th Cir. 1971), it may be exercised only in connection with a border crossing. This does not mean that a "border search" may be conducted only at a point of entry. It does mean, however, that to fall within the border-search exception to the probable cause requirement of the Fourth Amendment, a search conducted away from the immediate vicinity of the border must be the substantial equivalent of a search on entry. As usually stated, it must be "reasonably certain" from all the circumstances that any contraband that may be found aboard the vehicle would have been there at the time of entry. Thus, in Alexander v. United States, *supra*, 362 F.2d at 382–383:

> "Where * * * a search for contraband by Customs officers is not made at or in the immediate vicinity of the point of international border crossing, the legality of the search must be tested by a determination whether the totality of the surrounding circumstances, including the time and distance elapsed as well as the manner and extent of surveillance, are such as to convince the fact finder with reasonable certainty that any contraband which might be found in or on the vehicle at the time of search was aboard the vehicle at the time of entry into the jurisdiction of the United States." [5]

Recent cases appear to shift the emphasis from reasonable certainty that the contents of the vehicle were present at the time of entry, to reasonable certainty that the vehicle contains either goods that have just been smuggled or a person who has just crossed the border illegally. United States v. Weil, *supra*, 432 F.2d 1323; United States v. Markham, *supra*, 440 F.2d 1119. This formulation suggests that in order to justify a search of an automobile at any place other than the immediate border area, the searching officer must have reason to believe that goods are being brought into the country in the vehicle illegally—in short, a degree of reasonable cause to search is required, though less than the traditional "probable cause." [6]

Whatever the precise definition, however, a border search must be directly related to an entry across a border. A search that is not so related requires probable cause, see United States v. Ardle, 435 F.2d 861, 862 (9th Cir. 1971); United States v. Kandlis, 432 F.2d 132, 135 (9th Cir. 1970); for, to repeat, "those lawfully within the country, entitled to use the public highways, have a right to free passage without interruption or search unless there is known to a competent official authorized to search, probable cause for believing that their vehicles are carrying contraband or illegal merchandise. * * * " Carroll v. United States, *supra*, 267 U.S. at 154, 45 S.Ct. at 285.

## II

There is no apparent reason why these Fourth Amendment principles do not apply with the same force to searches of automobiles for smuggled aliens as they do to searches of automobiles for smuggled merchandise. Yet this court has drawn a sharp distinction between the two.

---

5. *See also* Valenzuela-Garcia v. United States, 425 F.2d 1170 (9th Cir. 1970); Castillo-Garcia v. United States, 424 F.2d 482, 485 (9th Cir. 1970); Bloomer v. United States, 409 F.2d 869 (9th Cir. 1969); Rodriguez-Gonzalez v. United States, 378 F.2d 256 (9th Cir. 1967); Leeks v. United States, 356 F.2d 470 (9th Cir. 1966); King v. United States, 348 F.2d 814 (9th Cir. 1965).

6. Decisions of the Courts of Appeals for the Second, Fourth, and Fifth Circuits convey the same impression. United States v. Glaziou, 402 F.2d 8, 13 n. 3 (2d Cir. 1968); United States v. McGlone, 394 F.2d 75, 78 (4th Cir. 1968); Stassi v. United States, 410 F.2d 946, 951–952 (5th Cir. 1969); Walker v. United States, 404 F.2d 900, 901–902 (5th Cir. 1968); Marsh v. United States, 344 F.2d 317, 324 (5th Cir. 1965). *See* Harris v. United States, 400 U.S. 1211, 91 S.Ct. 4, 27 L.Ed.2d 30 (1970).

Despite our recognition that the probable cause requirement of the Fourth Amendment applies to all searches by Customs officials for smuggled merchandise except border searches, this court, alone among the Courts of Appeals,[7] has expressly refused to impose the probable cause restriction upon searches for illegally entered aliens [8] conducted by Immigration and Naturalization officers pursuant to 8 U.S.C. § 1357(a) and 8 C.F.R. § 287.1(a) (3),[9] *whether or not* the search in question could qualify as a "border search" under the tests discussed above. Duprez v. United States, 435 F.2d 1276, 1277 (1970); Fumagalli v. United States, 429 F.2d 1011 (1970).

In the latter case, the court said (1013):

"What all of these cases make clear is that probable cause is not required for an *immigration* search within approved limits [100 miles from an external boundary as fixed by 8 C.F.R. § 287.1(a) (2)] but is generally required to sustain the legality of a search for *contraband* in a person's automobile away from the international borders. Valenzuela-Garcia v. United States, 425 F.2d 1170 (C.A. 9 1970).

Appellant has confused the two rules in his attempt to graft the probable cause standards of the *narcotics* cases (*Cervantes*) onto the rules justifying immigration inspections exemplified by *Contreras, Fernandez,* and other cases cited.

Applying these distinct tests in the instant case, the District Court found that the opening of the trunk was proper as part of a routine investigation for 'illegal aliens' and that probable cause to search the car was present when Inspector Camp *smelled* the marihuana odors and saw what appeared to be the corner of a brick of marihuana protruding from the mouth of the duffel bag."

If a reason exists for distinguishing searches for aliens from searches for merchandise, no one—including this court—has yet suggested what it might be. Nothing in the words of the Constitution supports the distinction. And no one suggests that the public interest in excluding inadmissible aliens is greater than that in excluding narcotics and other contraband.

The language in Carroll v. United States, *supra,* 267 U.S. at 154, 45 S.Ct. at 285, upon which the "border search" doctrine is based, indicates that for this purpose a search for aliens is indistinguishable from a search for merchandise: "Travelers may be so stopped in crossing an international boundary because of national self-protection reasonably requiring one entering the country *to identify himself as entitled to come in,* and his belongings as effects which may be lawfully brought in" (emphasis added).

No justification is offered in *Fumagalli, Duprez,* or in the majority opinion

---

7. With the possible exception of the Tenth. *See* Roa-Rodriquez v. United States, 410 F.2d 1206 (10th Cir. 1969).

8. In addition to the cases cited by the majority, *see* United States v. Marin, 444 F.2d 86 (1971); Duprez v. United States, 435 F.2d 1276, 1277 (1970); Fumagalli v. United States, 429 F.2d 1011 (1970); United States v. Avey, 428 F.2d 1159, 1164 (9th Cir., 1970); Miranda v. United States, 426 F.2d 283 (1970); Barba-Reyes v. United States, 387 F.2d 91 (9th Cir. 1967).

Earlier cases appear to require probable cause for the warrantless search of an automobile on a public highway by Immigration and Naturalization officers, except

in a "border search." Fernandez v. United States, 321 F.2d 283, 286 (1963); Contreras v. United States, 291 F.2d 63, 65–66 (9th Cir. 1961); Cervantes v. United States, 263 F.2d 800, 803 (9th Cir. 1959). However, in *Fumagalli, supra,* 429 F.2d at 1013, the court disposed of *Contreras* and *Fernandez* simply by asserting, despite language in both opinions arguably to the contrary, that both "explicitly *approve* the stopping *and inspection* of vehicles for concealed aliens without any requirement of probable cause." The court discounted *Cervantes* on the ground that it involved a search for narcotics (*ibid.*).

9. *See* notes 1 and 2.

in this case for the different treatment of searches of vehicles for "smuggled" aliens and searches of vehicles for smuggled merchandise. The opinions simply refer to the statutory grant to Immigration officers of authority "to board and search for aliens" any vehicle "within a reasonable distance from any external boundary of the United States," and to the regulation defining "reasonable distance" as one hundred miles.

But that is not enough. Even assuming that the statute reflects Congress' understanding of the reach of the Fourth Amendment,[10] Congress' view, though entitled to respect,[11] does not diminish the obligation of the judiciary to interpret and enforce the constitutional mandate independently. Obviously, "the statute could not effectively authorize a search which the Constitution prohibited." Corngold v. United States, 367 F.2d 1, 3–4 (9th Cir. 1966) (in banc).

The more reasonable interpretation of a statute of this sort is not that it defines a constitutional standard of reasonableness for searches by the government agents to whom it applies, but rather that it delegates authority to be exercised by those agents in accordance with

constitutional limitations.[12] Without such a statutory authorization, Immigration officers would have no legal power to search private vehicles for aliens under any conditions. The statute authorizes the officers to conduct such searches —and a search within the statute's terms is not illegal as beyond the officer's statutory authority. But a search within the literal language of the state is nonetheless barred if it violates the Fourth Amendment. See, e. g., Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L. Ed. 746 (1886).

It is axiomatic that a statute is to be construed to avoid conflict with constitutional standards. The statute authorizing Customs officers to search persons and vehicles for smuggled goods, taken literally, would authorize search of any person or vehicle at any time or place on no more than subjective suspicion.[13] But as noted above, this court and others have held that a showing of probable cause is required for all Customs searches except those qualifying as border searches. As Judge Duniway wrote in United States v. Weil, supra, 432 F.2d at 1323:

"In order to avoid conflict between this statute and the Fourth Amend-

---

10. Alexander v. United States, 362 F.2d 379, 381 (9th Cir. 1966).

11. Kelly v. United States, 197 F.2d 162, 164 (5th Cir. 1952).

12. Cf. United States v. Weil, 432 F.2d 1320 (9th Cir. 1970); Alexander v. United States, supra, 362 F.2d at 381; Morales v. United States, 378 F.2d 187, 190 (5th Cir. 1967). See also United States v. Thriftimart, Inc., 429 F.2d 1006, 1010 n. 5 (9th Cir. 1970).

The congressional committees which authored the Immigration and Nationality Act in 1952 recognized the role the Constitution must play in limiting the statutory authority of Immigration officers. House Report No. 1365 states (U.S.Code, Cong. & Ad.News 1952, Vol. 2, p. 1654):

"It has been repeatedly held that the right to exclude or to expel all aliens or any class of aliens, absolutely or upon certain conditions, in war or in peace, is an inherent and inalienable right of every sovereign and independent nation, essential to its safety, its independence,

and its welfare; that this power to exclude and to expel aliens, being a power affecting international relations, is vested in the political departments of the Government, and is to be regulated by treaty or by act of Congress and to be executed by the executive authority according to the regulations so established, except so far as the judicial department * * * is required by the paramount law of the Constitution to intervene" (emphasis added).

13. 19 U.S.C. § 482 reads in part:

"Any of the officers or persons authorized to board or search vessels may stop, search, and examine, as well without as within their respective districts, any vehicle, * * * or person, on which or whom he or they shall suspect there is merchandise which is subject to duty, or shall have been introduced into the United States in any manner contrary to law, whether by the person in possession or charge, or by, in, or upon such vehicle * * * or otherwise, * * * * "

ment, the statutory language has been restricted by the courts to 'border searches.' We must remember, however, that the phrase 'border search' does not appear in either the statute or the Constitution. It is merely the courts' shorthand way of defining the limitation that the Fourth Amendment imposes upon the right of customs agents to search without probable cause. The latter right is predicated on the right and obligation of the government, which predate the founding of the Republic, to prevent the importation of contraband or of undeclared, and therefore, untaxed, merchandise, and on the universal understanding that persons, parcels and vehicles crossing the border may be searched." [14]

In short, despite the broad sweep of the statute, Customs officers may conduct a search for smuggled merchandise without probable cause only in the restricted circumstances that qualify the intrusion as a "border search." [15] In all other circumstances, probable cause is required. Were it otherwise, "an individual would always be subject to search without probable cause no matter where he was in the United States and no matter how long he had been inside the United States if the search were conducted by the Bureau of Customs. Such a condition would be repugnant to the principles of the Fourth Amendment." United States v. Glaziou, *supra*, 402 F.2d at 13, n. 3.

The statutory provision authorizing Immigration officers to search for aliens should be similarly construed to comport with Fourth Amendment limitations,

Other provisions of the statute have been held to contain implied limitations consistent with constitutional principles. The constitutional limitations articulated in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), have been read into the first subparagraph of subsection (a) of section 1357, authorizing Immigration officers to interrogate aliens as to their right to be in the United States. Au Yi Lau v. I. & N. S., 445 F.2d 217 (D.C. Cir. 1971). The Fourth Amendment requirement of probable cause has been read into the second subparagraph of section 1357(a), authorizing arrests by such officers. *Ibid. See also* Yam Sang Kwai v. I. & N. S., 133 U.S.App.D.C. 369, 411 F.2d 683 (1969).

Similarly, subparagraph (a) (3) must be read as authorizing a warrantless search for aliens without probable cause only in accordance with Fourth Amendment limitations applicable to a "border search."

The government does not contend that the search in this case qualified as a "border search." The officers did not know with "reasonable certainty" that the occupants and contents of appellant's car were the same as they had been when the border was crossed—indeed, they did not know that the car had crossed

14. *See also* United States v. Glaziou, *supra*, 402 F.2d 8, 12; United States v. McGlone, *supra*, 394 F.2d 75, 77–78; Morales v. United States, *supra*, 378 F.2d 187, 189; Alexander v. United States, *supra*, 362 F.2d 379, 381–382; King v. United States, *supra*, 348 F.2d 814, 818; Witt v. United States, 287 F.2d 389, 391 (9th Cir. 1961).

15. For reasons previously discussed, the limits stated on the face of the statute are not controlling. It may be noted, however, that the statute authorizing Immigration officers to search for aliens is no broader than those which authorize

Customs officers to search for merchandise. Indeed, it is narrower.

Customs officers are authorized by 19 U.S.C. § 482 to search vehicles for merchandise "as well without as within their respective districts," with no stated geographic limits. They are authorized by 19 U.S.C. § 1581(a) to board any vehicle "at any place in the United States."

On the other hand, Immigration officers are authorized to search vehicles for aliens only "within a reasonable distance from any external boundary of the United States," 8 U.S.C. § 1357(a) (3), defined by regulation as one hundred miles. 8 C.F.R. § 287.1.

the border at all.[16]  And since there was no probable cause to stop the car and search it, appellant's Fourth Amendment rights were violated.  United States v. Kandlis, *supra*, 432 F.2d 132; Valenzuela-Garcia v. United States, 425 F.2d 1170 (9th Cir. 1970) ; Roa-Rodriquez v. United States, 410 F.2d 1206 (10th Cir. 1969; Montoya v. United States, 392 F.2d 731, (5th Cir. 1968) ; Contreras v. United States, 291 F.2d 63 (9th Cir. 1961) ; Cervantes v. United States, 263 F.2d 800 (9th Cir. 1959).

### III

There is no other basis upon which the search of appellant's car can be justified.

A.  We have held that an officer may stop an automobile for investigative interrogation of its occupants if he has "reasonable grounds" for such action. Wilson v. Porter, 361 F.2d 412, 415 (9th Cir. 1966) ; *see also* United States v. Oswald, 441 F.2d 44 (9th Cir. 1971).  This doctrine is of no assistance to the government, however, for it is clear from Terry v. Ohio, *supra*, 392 U.S. 1, 88 S.Ct. 1868, that though an officer may detain and question suspects on mere reasonable belief, any search conducted in connection with such a detention must be based upon reasonable cause to believe that the individuals are armed and dangerous and cannot exceed the scope required to disclose weapons that might be used to harm the officer or others nearby.  392 U.S. at 26–27, 30, 88 S.Ct. 1868.  In the present case, so far as the record shows, the Immigration officers had no grounds, "reasonable" or otherwise, for stopping appellant.  His car was selected at random from those moving north on Highway 78.  Even if the officers had grounds for the stop, they had no reason to believe that appellant was armed, and the search they conducted was not confined to that necessary to locate concealed weapons.

B.  The government does not seek to sustain the search of appellant's car as a routine administrative inspection under Camara v. Municipal Court, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967), and See v. Seattle, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967). For several reasons the doctrine of these cases is not applicable here.

1.  It is at least doubtful that the search in this case could be characterized as an "administrative" one, directed primarily to regulation and only incidentally to the detection of crime.  *Cf.* Camara v. Municipal Court, *supra*, 387 U.S. at 530, 537, 87 S.Ct. 1727.  The trunk of appellant's automobile was not searched for evidence of appellant's right to be in the United States.  The officers could only have been seeking aliens that appellant might have been bringing into the country illegally, a crime punishable by a $2,000 fine and five years' imprisonment.  8 U.S.C. § 1324.

2.  *Camara* and *See* require a showing that valid public interest justifies the particular intrusion.  387 U.S. at 536–537, 539, 87 S.Ct. 1727.  The governmental interest in excluding illegal aliens is undisputed.  However, no effort was made to show that "reasonable administrative standards have been established and are met in the inspection in question."  United States v. Thriftimart, Inc., 429 F.2d 1006, 1008–1009 (9th Cir.

---

16.  So far as the record shows, appellant was stopped at random with no reason to know where he had been, or when, except that he was driving north.

It was stipulated that, if called, the Immigration officers would have testified that "they inquired of him [appellant] prior to finding any contraband as to where he had come from, and he said from Mexicali [Mexico], and was going to Blythe, California ; and was going to leave the car in Blythe and return to Mexicali by bus."  It was also stipulated, however, that appellant would be deemed to have been called and to have testified "that he did not tell the officer that he had driven in from the Mexican side," and, in fact, that "he had picked up the car in Calexico in the United States and then driven it to the point where he was stopped."

1970).[17] The Court in *Camara* stressed the unavailability of alternative procedures less burdensome to Fourth Amendment interests. 387 U.S. at 535, 537, 87 S.Ct. 1727. Yet in the present case, nothing at all was offered to demonstrate, for example, why the public interest in preventing the entry of unauthorized aliens would not have been served equally well by an inspection at the international border confined to cars entering the country, rather than a random stop and search of any vehicle traveling on a public highway fifty miles from the border.

3. *Camara* and *See* do not authorize warrantless inspections. 387 U.S. at 528–534, 87 S.Ct. 1727. Thus, even if the record were adequate, the search would be invalid for failure to obtain a warrant. The moving automobile exception to the warrant requirement would not excuse the government's failure to obtain prior judicial approval of the roving inspection of automobiles on Highway 78, for by definition the inspection was directed to randomly selected vehicles on the particular stretch of highway rather than to any particular vehicle.

17. Since the government did not rely upon the administrative search theory to support the search, it is not surprising that the record is inadequate to support the necessary determinations. However, some evidence relevant to these inquiries was admitted. The government summarizes the stipulated testimony of the Immigration officers as follows:

"Two officers of the United States Border Patrol, Immigration and Naturalization, United States Department of Justice, were looking for aliens along Highway 78 near Glamis, California, which is about 50 miles north of the Mexican border on the road from Calexico to Blythe, California. The evidence would show that this is about the only north-south road in California coming from the Mexican border that does not have an established checkpoint; that because of this it is commonly used to evade checkpoints by both marihuana and alien smugglers. That on occasions, but not at all times, officers of the U. S. Border Patrol maintain a roving check of vehicles and persons on that particular highway. That pursuant to that they stopped this vehicle for the specific purpose of checking for aliens.

That they did check the card of this defendant, and it showed that he was a resident alien—that is, it was a resident alien card entitling him to reside and work in the United States. But that card was marked in a fashion indicating that he resided in Mexicali.

They inquired of him prior to finding any contraband as to where he had come from, and he said from Mexicali, and was going to Blythe, California; and was going to leave the car in Blythe and return to Mexicali by bus.

At that point Officer Shaw, in the presence of Officer Carrasco—these two previously mentioned officers of the U. S. Border Patrol—looked under the rear seat of the vehicle for aliens. The evidence would show that while he himself had never found aliens under the rear seats of automobiles, that he had heard of it on several occasions. That just prior to this there had been an information bulletin come out from the headquarters of the Border Patrol advising them of a special arrangement that now had developed in the Border Patrol where aliens would sit up right behind the back seat rest and their feet and legs would be doubled up under the rear seat cushion and that springs would be removed from the rear seat cushion to provide space for their legs. That in looking for aliens under the rear seat the officer discovered packages that he believed to be marihuana" (Appellee's brief 3–4).