**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Steven Robert SPEED and Henry Ray Rainer, Defendants-Appellants.**

**No. 73–2035.**

United States Court of Appeals, Fifth Circuit.

Dec. 28, 1973.

Fisher Alsup, Corpus Christi, Tex. (court-appointed), for Rainer.

Ronald D. Karchmer, Corpus Christi, Tex. (court-appointed), for Speed.

Anthony J. P. Farris, U. S. Atty., James R. Gough, Asst. U. S. Atty., Houston, Tex., for plaintiff-appellee.

Before RIVES, WISDOM and MORGAN, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge:

Appellants Speed and Rainer were convicted in a jury trial in the United States District Court for the Southern District of Texas of possession of marihuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). On appeal from these convictions, appellants argue that nine errors were made during their joint trial. Finding that the search which produced the marihuana introduced into evidence at the trial vio-

lated appellants' rights under the Fourth Amendment, we need not deal with any of the other assertions of error.

Early in the morning of June 18, 1972, appellants' car was stopped by the Border Patrol at a temporary checkpoint south of Falfurrias, Texas. The checkpoint was located on U. S. Highway 281, approximately 65 to 75 miles north of the Mexican border. The location was frequently used by the Border Patrol because in the past, it had been particularly effective in revealing illegal aliens and contraband. Highway 281 is a north-south artery connecting the border with the interior of the state. The area between the checkpoint and the border is sparsely populated, but between the checkpoint and the border are several small towns—among them, Rachal, Linn, Solino, Faysville and Edinburg. Thus, traffic traveling from these towns toward the interior of the state would pass through the checkpoint.

After the Border Patrol agent had stopped appellants' car, he inquired if they were American citizens. Upon finding that they were, he asked them to open the trunk. They told him they did not have the key. The agent then had the back seat of the car removed so he could search the trunk. The search revealed approximately 40 pounds of marihuana, which was introduced as evidence at appellants' trial. The search was supported by neither probable cause nor a warrant, but the district court denied appellants' motion to suppress the marihuana on the grounds that the search was justified by 8 U.S.C. § 1357[1] and was a border search.

The so-called "border search" exception to the warrant and probable cause requirements of the Fourth Amendment has received considerable attention in this circuit, especially since Almeida-Sanchez v. United States, 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973). See, e. g., United States v. Lonabaugh, (5 Cir. 1973) [December 17, 1973, No. 73–2241]; United States v. Steinkoenig, 487 F.2d 225 (5 Cir. 1973); United States v. McKim, 487 F.2d 305 (5 Cir. 1973); United States v. Bean, 484 F.2d 1275 (5 Cir. 1973); United States v. Byrd, 483 F.2d 1196 (5 Cir. 1973).

The idea that "border searches" are not restricted by the warrant and probable cause requirements of the Fourth Amendment was recognized by the Supreme Court long before Almeida-Sanchez. Carroll v. United States, 267 U.S. 132, 154, 45 S.Ct. 280, 69 L.Ed. 543 (1925). But the concept was never given any specific content by the Court, and different circuits had given wide-ranging interpretations to the doctrine. E. g., United States v. McDaniel, 463 F. 2d 129 (5 Cir. 1972), United States v. Hill, 430 F.2d 129 (5 Cir. 1970), United States v. Garcia, 415 F.2d 1141 (9 Cir. 1969), United States v. Glaziou, 402 F.2d 8 (2 Cir. 1968), United States v. McGlone, 394 F.2d 75 (4 Cir. 1968). See Anno., 6 A.L.R.Fed. 617 and cases cited therein.

■ Almeida-Sanchez, if it has not answered all the questions about this area of the law, has at least given new focus to the inquiries. We must now ask if a search occurred either at the border or at the functional equivalent thereof. 93 S.Ct. 2535, 37 L.Ed.2d at 602. If not, then it is not a border search.

With respect to the question of what constitutes a search at the functional

1. 8 U.S.C. § 1357 states, in part:
   (a) Any officer or employee of the Service authorized under regulations prescribed by the Attorney General shall have power without warrant—
   \*　　\*　　\*　　\*　　\*
   (3) within a reasonable distance from any external boundary of the United States, to board and search for aliens any vessel within the territorial waters of the United States and any railway car, aircraft, conveyance, or vehicle, and within a distance of twenty-five miles from any such external boundary to have access to private lands, but not dwellings, for the purpose of patrolling the border to prevent the illegal entry of aliens into the United States;
   \*　　\*　　\*　　\*　　\*

equivalent of the border, this court recently observed,

> Proximity to the border is not the only standard for determining whether a search is the functional equivalent of a search at the border. There must be some substantial connection with an actual or suspected border crossing by the person or thing to be searched. In other words, the searching officers must know or have a reasonable suspicion that the very individual or thing to be searched has itself just crossed the border. Judicial notice or even proof of many illegal acts in the area in which the search takes place is not enough. United States v. Lonabaugh, *supra*.

In *Almeida-Sanchez*, a roving border patrol searched a car on an east-west highway about 25 miles from the border. In this case, we have a temporary checkpoint located on a north-south highway between 65 and 75 miles from the border. Neither search was at the border or its functional equivalent.

 The distinction between a north-south road and an east-west road is relevant to the inquiry of what constitutes a border search, but it is not determinative. Here, there was too great an interference with internal, domestic highway traffic to justify the search as a border search in spite of the fact that the road eventually crossed the border. We are not willing to subject every resident of the area between the Falfurrias checkpoint and the border to virtually unrestricted searches whenever they use their automobiles.

The distinction between a checkpoint and a roving patrol is not important. There appears to be little difference between the interference with domestic traffic caused by patrols and that caused by temporary checkpoints which may be moved about at the whim of the agents who operate them.

Thus, what occurred in this case is essentially identical to the searches in *Almeida-Sanchez* and *Byrd*. The only connection to the border which could justify any of the searches was that they fell within the ambit of 8 U.S.C. § 1357(a) and 8 C.F.R. § 287.1, and that similar searches in the area had produced evidence of illegal activity. Neither a Congressional statute nor praise for the results of a certain investigative technique can justify an otherwise illegal search and seizure. The convictions of both appellants are

Reversed.