500 F.2d 985
 UNITED STATES of America, Appellee,
v.
James Robert PELTIER, Appellant.
 No. 73-2509.
 United States Court of Appeals, Ninth Circuit.
 May 9, 1974
Certiorari Granted Nov. 11, 1974
See 95 S.Ct. 302.
 
 Sandor W. Shapery (appeared), La Jolla, Cal., for appellant.
 Thomas M. Coffin, Asst. U.S. Atty. (appeared), Harry D. Steward, U.S. Atty., San Diego, Cal., for appellee.
 Before CHAMBERS, MERRILL, KOELSCH, BROWNING, DUNIWAY, ELY, HUFSTEDLER, WRIGHT, TRASK, CHOY, GOODWIN, WALLACE and SNEED, Circuit Judges.
 ALFRED T. GOODWIN, Circuit Judge:
 
 
 1
 James Robert Peltier's appeal has been taken en banc so the full court can consider whether the rule announced by the Supreme Court in Almeida-Sanchez v. United States, 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973), rev'g, 452 F.2d 459 (9th Cir. 1971), should be applied to similar cases pending on appeal[1] on the date the Supreme Court's decision was announced. We hold that it should, reverse Peltier's conviction, and remand the matter to the district court.
 
 
 2
 Peltier was convicted of possessing marijuana, with intent to distribute, in violation of 21 U.S.C. 841(a)(1). The evidence was discovered during a search conducted on February 28, 1973, by border-patrol agents on roving patrol on Highway 395 near Temecula, California.
 
 
 3
 On June 21, 1973, the Supreme Court, in its opinion reversing this court's Almeida-Sanchez opinion, held that border-patrol agents on roving patrol cannot stop and search automobiles pursuant to 8 U.S.C. 1357(a) and 8 C.F.R. 287.1 without probable cause or warrant.
 
 
 4
 The search in question here was of the same type as that condemned in Almeida-Sanchez. There, the search was conducted 25 miles north of the Mexican border, on a California east-west highway that lies at all points at least 20 miles north of the border. 413 U.S. at 267-268, 273. Here, the search was conducted approximately 70 air miles north of the Mexican border and well to the north of the San Diego metropolitan area. The government concedes that the evidence must be suppressed if the rule announced in Almeida-Sanchez applies to this case.
 
 
 5
 Until Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), the Supreme Court traditionally applied new constitutional criminal-procedure standards retroactively in all cases. 381 U.S. at 628. See generally Haddad, 'Retroactivity Should Be Rethought': A Call for the End of the Linkletter Doctrine, 60 J.Crim.L., C. & P.S. 417, 425-26 (1969); Mishkin, The High Court, the Great Writ, and the Due Process of Time and Law, 79 Harv.L.Rev. 56, 56-57 (1965). In Linkletter the Court was required to decide whether Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), which overruled Wolf v. Colorado, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949), should be given retroactive effect. After reviewing the history and theory of the problem of retroactivity, the Court concluded that the Constitution neither prohibits nor requires that the Court's decisions be applied retroactively. In each case the Court must determine whether retroactive or prospective application is appropriate. Linkletter v. Walker, 381 U.S. at 629.
 
 
 6
 In Linkletter's successors the Court devised a three-point test to determine whether or not to apply a new constitutional doctrine retroactively. The test looked to (a) the purpose to be served by the new standards, (b) the extent of reliance by law-enforcement officials on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards. See Stovall v. Denno, 388 U.S. 293, 297, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).
 
 
 7
 However, for the doctrine of retroactivity to be relevant at all, the Court must have articulated a new doctrine.
 
 
 8
 'An issue of the 'retroactivity' of a decision of this Court is not even presented unless the decision in question marks a sharp break in the web of the law. The issue is presented only when the decision overrules clear past precedent * * * or disrupts a practice long accepted and widely relied upon * * *.' Milton v. Wainwright, 407 U.S. 371, 381-382, n. 2, 92 S.Ct. 2174, 2180, 33 L.Ed.2d 1 (1972) (dissenting opinion of Mr. Justice Stewart).
 
 
 9
 See also Gosa v. Mayden, 413 U.S. 665, 672-673, 93 S.Ct. 2926, 37 L.Ed.2d 873 (1973); Michigan v. Payne, 412 U.S. 47, 50-51, 93 S.Ct. 1966, 36 L.Ed.2d 736 (1973); Chevron Oil Co. v. Huson, 404, U.S. 97, 106, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971); Williams v. United States, 401 U.S. 646, 659, 91 S.Ct. 1148, 28 L.Ed.2d 388 (1971).
 
 
 10
 Linkletter itself fits into the first category-- decisions overruling 'clear past precedent'-- since it involved the retroactivity of Mapp v. Ohio, supra, which overruled Wolf v. Colorado, supra. See also Williams v. United States, supra, involving the retroactivity of Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), which reversed United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950), and Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947); Fuller v. Alaska, 393 U.S. 80, 89 S.Ct. 61, 21 L.Ed.2d 212 (1968) (per curiam), involving the retroactivity of Lee v. Florida, 392 U.S. 378, 88 S.Ct. 2096, 20 L.Ed.2d 1166 (1968), which overruled Schwartz v. Texas, 344 U.S. 199, 73 S.Ct. 232, 97 L.Ed. 231 (1952); Desist v. United States, 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969), involving the retroactivity of Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), which specifically rejected Goldman v. United States, 316 U.S. 129, 62 S.Ct. 993, 86 L.Ed. 1322 (1942), and Olmstead v. United States, 277 U.S. 438, 48 S.Ct. 564, 72 L.Ed. 944 (1928); Tehan v. Shott, 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453 (1966), involving the retroactivity of Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), which overruled Twining v. New Jersey, 211 U.S. 78, 29 S.Ct. 14, 53 L.Ed. 97 (1908).
 
 
 11
 Representative of cases within the second category-- decisions disrupting 'a practice long accepted and widely relied upon'-- is Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966), which held that Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), would not apply retroactively. The Court in Johnson observed that prior to Miranda and Escobedo it had expressly declined to condemn an entire process of in-custody interrogation solely because police had failed to warn accused persons of their rights or had failed to grant them access to outside assistance, and that law-enforcement agencies had relied upon the Court's acquiescence. 384 U.S. at 731. See also Gosa v. Mayden, supra, involving the retroactivity of O'Callahan v. Parker, 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969); Adams v. Illinois, 405 U.S. 278, 92 S.Ct. 916, 31 L.Ed.2d 202 (1972), involving the retroactivity of Coleman v. Alabama, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970); Halliday v. United States, 394 U.S. 831, 89 S.Ct. 1498, 23 L.Ed.2d 16 (1969) (per curiam), involving the retroactivity of McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969); Stovall v. Denno, supra, involving the retroactivity of United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967).
 
 
 12
 Almeida-Sanchez, by contrast, neither overruled past precedent of the Supreme Court nor disrupted long-accepted practice. Mr. Justice Stewart's opinion for the Court, after reviewing the Court's automobile-search decisions and its administrative-inspection decisions, concluded that neither line of authority 'provide(s) any support for the constitutionality of the stop and search in the present case * * *.' 413 U.S. at 272.[2] Clearly, then, Almeida-Sanchez overruled no earlier Supreme Court precedent; rather, it reaffirmed well-established Fourth Amendment standards dating back to Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914), and Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925).
 
 
 13
 Nor did Almeida-Sanchez disturb a long-accepted and relied-upon practice. Although the government claims that it has relied upon judicial approval of roving searches prior to June 21, 1973, it has cited only one of our opinions, prior to our overruled decision in Almeida-Sanchez, holding that government agents on roving patrol can stop and search automobiles without either probable cause or warrant. United States v. Miranda, 426 F.2d 283 (9th Cir. 1970).[3]
 
 
 14
 All of our other pre-Almeida-Sanchez decisions upholding roving-patrol searches away from the border involved stops that were predicated upon: (a) probable cause to believe that the automobile stopped was carrying illegal aliens or contraband, see e.g., United States v. Ardle, 435 F.2d 861 (9th Cir. 1970), cert. denied, 402 U.S. 947, 91 S.Ct. 1638, 29 L.Ed.2d 116 (1971); cf. United States v. Kandlis, 432 F.2d 132 (9th Cir. 1970); or (b) a reasonable certainty that any contraband which might be found in or on the vehicle at the time of the search was aboard the vehicle at the time it entered the United States, see, e.g., Alexander v. United States, 362 F.2d 379 (9th Cir.), cert. denied, 385 U.S. 977, 87 S.Ct. 519, 17 L.Ed.2d 439 (1966); or (c) a reasonable certainty that the vehicle searched contained either goods which have just been smuggled or a person who has just crossed the border illegally. See, e.g., United States v. Weil, 432 F.2d 1320, 1323 (9th Cir. 1970), cert. denied, 401 U.S. 947, 91 S.Ct. 933, 28 L.Ed.2d 230 (1971). See generally Note, In Search of the Border: Federal Customs and Immigration Officers, 5 N.Y.U.J. Int'l L. & Politics 93 (1972). Moreover, our line of decisions, and that of the Court of Appeals for the Tenth Circuit (see, e.g., Roa-Rodriguez v. United States, 410 F.2d 1206 (10th Cir. 1969)), permitting roving searches by the border patrol, enjoyed only brief acceptance and failed its first test before the Supreme Court.
 
 
 15
 The government fares no better in its alternate claim that it was relying not only on prior judicial approval of roving searches but also upon the literal command of Congress and a regulation authorizing such searches. Section 287(a) (3) of the Immigration and Nationality Act, 8 U.S.C. 1357(a)(3), provides for warrantless searches of automobiles and other conveyances 'within a reasonable distance from any external boundary of the United States * * *.' This section, enacted in 1952, revised in a manner not relevant here a statute enacted in 1946. Act of Aug. 7, 1946, ch. 768, 60 Stat. 865. Soon after the 1952 revision, the Attorney General promulgated regulations, one of which defined 'reasonable distance' as 'within 100 air miles from any external boundary of the United States * * *.' 8 C.F.R. 287.1(a)(2).
 
 
 16
 This statute and regulation must, however, be read in light of the Fourth Amendment; and when so understood, they merely delegate authority to be exercised by border-patrol agents in accordance with constitutional limitations. Without the statutory authorization conferred by 287(a)(3), border-patrol agents would not have legal power to search private vehicles for aliens under any circumstances. Under the statute, they are permitted to conduct certain warrantless searches. But, unless the search qualifies as a border search, the statute should not be read, as this court has read it, to dispense with the requirement of probable cause as well as the requirement of a warrant.
 
 
 17
 When the Supreme Court reversed us in Almeida-Sanchez, it did not declare the statute unconstitutional; it merely read the Fourth Amendment requirement of probable cause into the right of border-patrol agents to conduct warrantless searches which were not the functional equivalents of border searches. Other sections of the same act had earlier been subjected to similar judicial constructions to avoid conflicts with constitutional standards. See United States v. Almeida-Sanchez, 452 F.2d 459, 465-467 (9th Cir. 1971) (dissenting opinion of Browning J.), rev'd, 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973). Judicial interpretation of a statute and departmental regulation to eliminate conflict with the Fourth Amendment hardly qualifies as the kind of 'new' constitutional rule sufficient to deny an appellant the fruits of his appeal.
 
 
 18
 Peltier is not claiming the benefit of any decision overruling or enlarging 'then-applicable constitutional norms,' Williams v. United States, 401 U.S. at 654; rather, he seeks the application of principles enunciated by Chief Justice Taft in 1925 in Carroll and consistently adhered to by the Supreme Court thereafter. This is a case not so much of the retroactivity of Almeida-Sanchez as of the continued vitality of Carroll and its successors. The Supreme Court in Almeida-Sanchez was not announcing a new legal doctrine, but correcting an aberration. Peltier is entitled to the benefit of the rule announced in Almeida-Sanchez, not because of retroactivity but because of Fourth Amendment principles never deviated from by the Supreme Court.
 
 
 19
 A Supreme Court decision overruling state or circuit court decisions does not necessarily mark a departure from prior decisions of the Supreme Court. Robinson v. Neil, 409 U.S. 505, 93 S.Ct. 876, 35 L.Ed.2d 29 (1973). The Supreme Court faced the question whether Waller v. Florida, 397 U.S. 387, 90 S.Ct. 1184, 25 L.Ed.2d 435 (1970), which barred duplicate prosecutions when a single act violated both state and municipal laws, was fully retroactive. The Court concluded:
 
 
 20
 '* * * This Court had not earlier had occasion to squarely pass on the issue. But its decision in Waller cannot be said to have marked a departure from past decisions of this Court. Therefore, while Waller-type cases may involve a form of practical prejudice to the State over and above the refusal to permit the trial which the Constitution bars, the justifiability of the State's reliance on lower court decisions supporting the dual sovereignty analogy was a good deal more dubious than the justification for reliance which has been given weight in our Linkletter (v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601) line of cases * * *.
 
 
 21
 'We hold, therefore, that our decision in Waller v. Florida (397 U.S. 387, 90 S.Ct. 1184, 25 L.Ed.2d 435 (1970)), is to be accorded full retroactive effect * * *.' Robinson v. Neil, 409 U.S. at 510-511.
 
 
 22
 The conclusion which we have reached here may or may not be consistent with the result in the other circuits that have before them the application of Almeida-Sanchez to searches conducted prior to June 21, 1973. The Fifth Circuit recently held that Almeida-Sanchez is not to be given retrospective effect. United States v. Miller, 492 F.2d 37 (5th Cir., 1974). However, its opinion does not mention three other cases in which the circuit applied Almeida-Sanchez retroactively without discussion. See United States v. Speed, 489 F.2d 478 (5th Cir. 1973); United States v. McKim, 487 F.2d 305 (5th Cir. 1973); United States v. Byrd, 483 F.2d 1196 (5th Cir. 1973). The Tenth Circuit also has applied Almeida-Sanchez to pending cases in which the search occurred prior to the decision in Almeida-Sanchez. See United States v. King, 485 F.2d 353, 359 (10th Cir. 1973); United States v. Maddox, 485 F.2d 361, 363 (10th Cir. 1973).
 
 
 23
 The judgment of conviction is reversed, and the matter remanded to the district court with instructions to suppress the evidence seized in the search of Peltier's automobile.
 
 
 24
 Circuit Judges CHAMBERS, MERRILL, BROWNING, DUNIWAY, ELY and HUFSTEDLER concur in this majority opinion.
 
 WALLACE, Circuit Judge (dissenting):
 
 25
 I respectfully dissent.
 
 
 26
 The majority does not attempt to justify retroactivity based upon the tests of Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), and Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). Rather it asserts that before the question of retroactivity even becomes relevant, we must decide whether the Court in Almeida-Sanchez v. United States, 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973), articulated a 'new' constitutional rule. In order to be new, the majority contends, the constitutional rule must overrule 'clear past precedent' or disrupt 'a practice long accepted and widely relied upon.' This threshold test comes from a footnote in Justice Stewart's dissent in Milton v. Wainwright, 407 U.S. 371, 381-382 n. 2, 92 S.Ct. 2174, 2180, 33 L.Ed.2d 1 (1972). As we noted in United States v. Bowen, 500 F.2d 960, 975 n. 1 (9th Cir. 1974), it is unclear whether this abridged test should be applied in all cases. But even applying the test adopted by the majority, I disagree that the Almeida-Sanchez pronouncement is not new and, therefore, I believe the Stovall test is relevant.
 
 
 27
 The majority contends that the appropriate interpretation of the Supreme Court's holding in Almeida-Sanchez demonstrates that the rule is not new and dictates retroactivity. But the majority, falling into the same error as the majority did in Part I of United States v. Bowen, 500 F.2d 962, 968 (9th Cir. 1974) (Wallace, J. dissenting), fails to distinguish between where a majority of Justices has made a pronouncement and where it has not. Justice White, writing for himself and three other Justices, reviewed decisions of each of the courts of appeals having jurisdiction over districts bordering Mexico and concluded:
 
 
 28
 Those courts and judges best positioned to make intelligent and sensible assessments of the requirements of reasonableness in the context of controlling illegal entries into this country have consistently and almost without dissent come to the same conclusion that is embodied in the judgment that is reversed today.
 
 
 29
 413 U.S. at 298. Justice Powell, although concurring in the Opinion of the Court, agreed with Justice White's conclusion on this point:
 
 
 30
 Roving automobile searches in border regions for aliens, likewise, have been consistently approved by the judiciary. While the question is one of first impression in this Court, such searches uniformly have been sustained by the courts of appeals whose jurisdictions include those areas of the border between Mexico and the United States where the problem has been most severe.
 
 
 31
 413 U.S. at 278. The tenor of these statements, representing five of the nine Justices, seems more consistent with the conclusion that Almeida-Sanchez established a new constitutional rule.
 
 
 32
 * Even ignoring that a majority of the Supreme Court may well believe that Almeida-Sanchez constitutes a new rule, the test adopted by the majority, when properly applied, also demonstrates that the rule of Almeida-Sanchez is new. Under the first alternative of the majority's test, a decision constitutes a new constitutional rule if it overrules 'clear past precedent.' It cannot be contended that to meet this alternative, the Supreme Court must reverse one of its prior decisions. On the contrary, as we held in United States v. Bowen, 500 F.2d 960, 976 (9th Cir. 1974): 'The test does not require . . . that the Supreme Court reverse itself in order for there to be an overruling of clear past precedent.'
 
 
 33
 Prior to Almeida-Sanchez, the courts of appeals gave no indication that roving stops and searches were unconstitutional. See, e.g., United States v. Miranda, 426 F.2d 283 (9th Cir. 1970); Roa-Rodriquez v. United States, 410 F.2d 1206 (10th Cir. 1969). See United States v. McDaniel, 463 F.2d 129 (5th Cir. 1972), cert. denied, 413 U.S. 919, 93 S.Ct. 3046, 37 L.Ed.2d 1041 (1973). The majority contends that this stream of judicial pronouncements is a mere aberration. However, these consistent holdings can hardly be said to be a deviation from the law when 35 of 36 judges who have considered the question in the three circuits involved in enforcing the immigration laws along our Mexican border have upheld immigration stops and searches. Almeida-Sanchez v. United States, 413 U.S. at 298-299 n. 10 (White, J., dissenting). Almeida-Sanchez does overrule clear past precedent.
 
 
 34
 The majority's treatment of the statute pursuant to which the Border Patrol acted also deserves attention. Since 1952, searches for aliens within a reasonable distance from the border have been authorized by Congress. 8 U.S.C. 1357(a)(3). Merely stating, as does the majority, that statutes have to be measured by the Constitution only begs the question. As we held in United States v. Bowen, 500 F.2d at 977:
 
 
 35
 Although it is true that statutes have to be measured by the Constitution, a legally enacted statute becomes the law until it is vitiated by a court decision. Where the constitutionality of the statute has been repeatedly upheld by the lower courts, it becomes a clear precedent for law enforcement action. Prior statutory law should be treated no differently from prior case law.
 
 
 36
 The identical statute which we held to be clear past precedent in Bowen is involved in this case. There we held that in applying the first alternative of the threshold test, 'prior statutory law should be treated no differently from prior case law.' United States v. Bowen, 500 F.2d at 977 I, therefore, fail to see why Almeida-Sanchez does not overrule clear past precedent, both statutory and case law.
 
 II
 
 37
 Under the second alternative of the majority's test, a decision constitutes a new constitutional rule if it 'disrupts a practice long accepted and widely relied upon.' Justice Stewart, in Chevron Oil Co. v. Huson, 404 U.S. 97, 106, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), formulated the second alternative in language that adds an additional dimension. He stated that a decision may constitute a new rule either by overruling past precedent (the first alternative of the majority's test) 'or by deciding an issue of first impression whose resolution was not clearly foreshadowed . . ..' Under the Chevron Oil formulation of the test, Almeida-Sanchez clearly constitutes a new rule. First, the majority concedes that this issue has not previously been presented to the Supreme Court, making it by definition 'an issue of first impression' before that Court. Second, the resolution of an issue that would invalidate immigration stops and searches was not foreshadowed. As Justice White stated in Almeida-Sanchez:
 
 
 38
 . . . I cannot but uphold the judgment of Congress that for purposes of enforcing the immigration laws it is reasonable to treat the exterior boundaries of the country as a zone, not a line, and that there are recurring circumstances in which the search of vehicular traffic without warrant and without probable cause may be reasonable under the Fourth Amendment although not carried out at the border itself.
 
 
 39
 This has also been the considered judgment of the three Courts of Appeals whose daily concern is the enforcement of the immigration laws along the Mexican-American border, and who, although as sensitive to constitutional commands as we are, perhaps have a better vantage point than we here on the Potomac to judge the practicalities of border-area law enforcement and the reasonableness of official searches of vehicles to enforce the immigration statutes.
 
 
 40
 413 U.S. at 294-295. Numerous appellate court cases have dealt with this issue and yet, the result prior to Almeida-Sanchez was consistently to uphold the stop and search. There simply was no foreshadowing of the Almeida-Sanchez rule.
 
 
 41
 However, even under the majority's formulation of the second alternative, Almeida-Sanchez still constitutes a new rule. The majority reaches an opposite conclusion by contending that there is only one prior decision in our circuit squarely upholding the roving patrol search. The majority observes in a footnote that, in cases dating back to 1961, we have approved similar immigration searches (500 F.2d at 978, n. 3), but discounts all of those cases on the basis that any approving language is dicta. The majority, however, fails to explain why this classification should make a difference. The cases, whether or not the language is dicta, are important because they demonstrate a long accepted practice that has been widely relied upon. Apparently four Justices of the Supreme Court did not make such a distinction, for Justice White stated in reference to our circuit:
 
 
 42
 Under 1357(a)(3), automobiles may be stopped without warrant or probable cause and a limited search for aliens carried out in those portions of the conveyance capable of concealing any illegal immigrant. This has been the consistent view of that court.
 
 
 43
 Almeida-Sanchez, 413 U.S. at 295 (White, J., dissenting).
 
 
 44
 Not only has the Border Patrol been following a practice sanctioned by our prior cases, it has also been complying with 8 U.S.C. 1357(a)(3) in making roving patrol stops. The statute explicitly authorizes immigration officials, within a reasonable distance of the border, to search vehicles without a warrant for illegal aliens. The statute in its present form was adopted in 1952. Since 1963, we have upheld the constitutionality of the statute. Fernandez v. United States, 321 F.2d 283 (9th Cir. 1963). A law enforcement practice, authorized for over a decade, adequately meets the second requirement of the majority's threshold test.
 
 III
 
 45
 If either alternative of the majority's threshold test is met, Almeida-Sanchez states a new rule. Here, both alternatives are met and, therefore, retroactivity should be judged by the Stovall test. Applying that test and for reasons similar to those stated in Part II of United States v. Bowen, 500 F.2d at 975, I would hold that the retroactivity test would require prospective application in this case.[1] As the Court stated in Linkletter v. Walker, 381 U.S. at 637:
 
 
 46
 In rejecting the Wolf doctrine as to the exclusionary rule the purpose was to deter the lawless action of the police and to effectively enforce the Fourth Amendment. That purpose will not at this late date be served by the wholesale release of the guilty victims.
 
 
 47
 Circuit Judges KOELSCH, EUGENE A. WRIGHT, TRASK, CHOY and SNEED concur in this dissenting opinion.
 
 
 
 [1]
 We do not have before us the question of the effect of Almeida-Sanchez upon a conviction being tested in a collateral attack, and we express no opinion upon that
 
 
 [2]
 Mr. Justice Powell, in his concurring opinion, also noted:
 '* * * (I) join in the opinion of the Court, which sufficiently establishes that none of our Fourth Amendment decisions supports the search conducted in this case * * *.' 413 U.S. at 275.
 
 
 [3]
 We concede that a number of other opinions do contain some dicta from which the government might infer that this court would uphold a roving-patrol search so long as it was conducted within the 100-mile area defined in 8 C.F.R. 287.1. See, e.g., Duprez v. United States, 435 F.2d 1276, 1277 (9th Cir. 1970); Fumagalli v. United States, 429 F.2d 1011, 1013 (9th Cir. 1970); United States v. Elder, 425 F.2d 1002, 1004 (9th Cir. 1970); Barba-Reyes v. United States, 387 F.2d 91 (9th Cir. 1967); Fernandez v. United States, 321 F.2d 283 (9th Cir. 1963); Contreras v. United States, 291 F.2d 63 (9th Cir. 1961). Nonetheless, United States v. Miranda, supra, is the only case which has been called to our attention in which this court held that a stop and search conducted by immigration agents on roving patrol was proper
 
 
 [1]
 The majority's disclaimer in footnote 1, reserving the question of the application of Almeida-Sanchez to collateral attacks upon prior convictions, does not minimize the potential havoc the majority's ruling could have on the administration of justice. Because of its retroactivity stance, any distinction between a defendant with a case on appeal at the time of the Almeida-Sanchez decision and the countless others whose convictions were final prior to that time would be artificial at best. It appears to me that if the Court in Almeida-Sanchez did not enunciate a new rule, all convictions based upon evidence obtained during a roving patrol search without warrant or probable cause must be reversed, regardless of whether they are now final or on direct review. This conclusion is supported by the Court's statement in Stovall v. Denno, 388 U.S. 293, 300, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967):
 We also conclude that, for these purposes, no distinction is justified between convictions now final, as in the instant case, and convictions at various stages of trial and direct review.
 As Justice White said in Williams v. United States, 401 U.S. 646, 656, 91 S.Ct. 1148, 1154, 28 L.Ed.2d 388 (1971):
 It should be clear that we find no constitutional difference between the applicability of Chimel to those prior convictions that are here on direct appeal and those involving collateral proceedings.
 Three other Justices joined in Justice White's opinion and Justice Marshall's dissent can be considered to be in harmony with the language quoted to the extent that he would apply the Stovall test in cases that are before the Court on collateral attack.