Ruben Silva **MORALES**, Plaintiff,

v.

Howard W. **HAMILTON**, United States
Border Patrol Agent, et al.,
Defendants.

No. CIV 74–102–TUC–WCF.

United States District Court,
D. Arizona.

Feb. 14, 1975.

Howard A. Kashman, Lieberthal & Kashman, Tucson, Ariz., for plaintiff.

William C. Smitherman, U.S. Atty., Stephen M. McNamee, Asst. U.S. Atty., Dist. of Ariz., Tucson, Ariz., for defendants.

## MEMORANDUM AND ORDER

FREY, District Judge.

### FACTS

Plaintiff, Ruben Silva Morales, filed the present complaint against Border Patrol Agents, Howard W. Hamilton, Mario C. Chamberlain and Thomas B. Frederick and Treasury Department Special Agents, Donald J. Wales and Robert Sheppard. Plaintiff alleges jurisdiction under Title 28, United States Code, Section 1331(a). The complaint further alleges that on June 4, 1973, defendants, acting under color of Federal law, subjected plaintiff to an unreasonable search and seizure and arrested him in contravention of the requirements of the Fourth Amendment. Plaintiff prays for judgment against defendants in an amount that will justly and reasonably compensate him for his damages as alleged in the complaint.

On June 4, 1973, Border Patrol Agent Howard Hamilton was spot checking traffic on U.S. 89 and I-19 to determine if the vehicles contained illegal aliens.

During the morning of June 4, Agent Hamilton stopped a vehicle in which the plaintiff was the driver and sole occupant. At that time Hamilton was dressed in an official Border Patrol uniform and was using an official vehicle.

During investigative questioning of plaintiff, Agent Hamilton requested the keys to the vehicle. Plaintiff stated he did not have the keys. Hamilton proceeded to check the vehicle for aliens and removed the back seat of plaintiff's vehicle in order to check the trunk. Up-on removing the back seat, Agent Hamilton discovered 2 sacks of what he believed to be marijuana.

Border Patrol Agent Hamilton then radioed for assistance. In response to his call, Border Patrol Agents Thomas B. Frederick and Mario C. Chamberlain arrived at Hamilton's location. Agents Frederick and Chamberlain were also dressed in the official Border Patrol uniform and were in a marked official vehicle. Agent Chamberlain conducted a personal search of the plaintiff and found a set of keys in the plaintiff's pocket. Hamilton then used the keys to open the trunk of the vehicle and again observed the sacks of marijuana. The Border Patrol Agents then radioed for assistance from the United States Customs Agency and Customs Special Agents Donald J. Wales, Robert R. Sheppard and Donald Reay (not a defendant herein) responded to the call.

After the Customs Agents determined that the substance in the trunk was marijuana, plaintiff was placed under arrest, transported to the Customs Agency in Nogales for processing and booked into the Santa Cruz County jail.

On June 11, 1973, plaintiff consented to be treated as a juvenile and admitted the allegations in the information. On June 21, 1973, the United States Supreme Court handed down Almeida-Sanchez v. United States, 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596, which ultimately governed the search in this case by virtue of the Ninth Circuit opinion in United States v. Peltier, 500 F.2d 985.

On July 2, 1973, the plaintiff's admission to the allegation was set aside by the court. On July 6, 1973, a hearing was had on plaintiff's Motion to Suppress before the Honorable James A. Walsh of this Court. A juvenile trial also proceeded at that time. A transcript of the motion and trial proceedings is attached to defendants' motions as Exhibit 1. The Motion to Suppress was denied. The Court held that on the basis of the evidence that had been presented, the Border Patrol had legally

stopped the vehicle for the purpose of checking it for illegal aliens. The Court went on to say that while the Supreme Court had recently held that such is not a legal search, in his judgment that rule was not retroactive in light of *Chimel* and other cases, where the Court had changed the law governing search and seizure. The Judge stated that at the time of the search in this case, three circuits, the Ninth Circuit, the Tenth Circuit and the Fifth Circuit had all ruled for years that a search such as that involved, was lawful.

After all the evidence was presented, Judge Walsh concluded that the plaintiff did commit an offense of juvenile delinquency.

On May 29, 1974, the Ninth Circuit Court of Appeals reversed the judgment adjudging plaintiff a juvenile delinquent based on the retroactive application of *Almeida-Sanchez, supra,* announced in United States v. Peltier, 500 F.2d 985, by a closely divided full Court.

### DISCUSSION

At the outset of this discussion we can dispose of this case as to defendants Frederick, Wales and Sheppard. Counsel for plaintiff conceded during oral argument that their motion for summary judgment was well taken because they were, at all times pertinent to this lawsuit, acting only within the scope of their official duties and not performing any discretionary acts.

Defendants contend that plaintiff's complaint fails to state a claim upon which relief can be granted, therefore it should be dismissed. In order to support this position defendants cite, *inter alia,* Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1966) and Slate v. McFetridge, 484 F.2d 1169 (7th Cir. 1973) which are cases where state officers were sued pursuant to Section 1983 of Title 42, United States Code, for alleged deprivations of constitutionally protected rights. These cases held that a reasonable good faith reliance on the state of the law at the time of the acts in question is a defense to a subsequent suit for damages where the subsequent suit is based on the unconstitutionality of the prior law.

Another basis for defendants' Motion to Dismiss is the well established rule that certain officers of the federal government, acting in their official capacities are immune from lawsuits. The classic modern case on the subject is Gregoire v. Biddle, 177 F.2d 579 (2nd Cir. 1949), cert. den., 339 U.S. 949, 70 S.Ct. 803, 94 L.Ed. 1363 (1950), where Judge Learned Hand held that two successive Attorneys General of the United States, two successive Directors of the Enemy Alien Control Unit of the Department of Justice and the District Director of Immigration at Ellis Island had immunity from civil suits brought against them for acts done in their official capacities.

In Barr v. Mateo, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959), the Supreme Court adopted the reasoning of Judge Hand and held that an official is immune if he performs "discretionary acts at those levels of government where the concept of duty encompasses the sound exercise of discretionary authority." Once an official is found to be exercising this kind of discretion, the act complained of must be "within the outer perimeter of [the official's] line of duty" before the official will be granted immunity. The Ninth Circuit has adopted the official immunity doctrine. See, e. g., Frommhagen v. Glazer, 442 F.2d 338 (9th Cir. 1971).

There appears to be little doubt that plaintiff's complaint states a cause of action and therefore should not be dismissed for this reason. See *Bivens, infra.*

In Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L. Ed.2d 619 (1971), the petitioner brought suit for damages against certain federal officers for violation of constitutionally protected rights. The Supreme Court held that petitioner's complaint stated a federal cause of action under the

Fourth Amendment for which damages are recoverable upon proof of injuries resulting from federal agents' violation of that amendment.

In the *Bivens* case, the Supreme Court remanded the matter to the Court of Appeals to decide whether the acts of the Federal Bureau of Narcotics were clothed with immunity. In Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 456 F.2d 1339 (2nd Cir. 1972), the Court held that it is a principle of federal law that Agents of the Federal Bureau of Narcotics and other federal police officers such as agents of the FBI performing similar functions, while in the act of pursuing alleged violators of the narcotics laws or other criminal statutes, have no immunity to protect them from damage suits charging violations of constitutional rights. The Court further held that it is a valid defense to such charges to allege and prove that the federal agent or other federal police officer acted in the matter complained of in good faith and with a reasonable belief in the validity of the arrest and search and in the necessity for carrying out the arrest and search in the manner in which the arrest was made and the search conducted.

■ However, summary judgment should be granted in this case for two reasons. First, the officers' conduct such as that complained of had always met with approval by the Courts prior to June 21, 1973. Thus, at the time of the stop and search in this case, plaintiff did not have and could not have had such a cause of action against defendants. The decision by the Ninth Circuit to apply the doctrine of *"Almeida-Sanchez"* retroactively does not create a new civil action against the defendants. Such a result would be in the nature of an ex post facto law and a violation of Const. Art. 1, Section 9, Clause 3. The *Almeida-Sanchez* and *Peltier* decisions could not have given plaintiff a cause of action which he did not originally have.

Plaintiff alleges that the officers in this case do not have the responsibility of obtaining a law degree or to decide when the law is going to be overruled. They only have the duty of knowing what the law is and seeing the inconsistencies. Plaintiff alleges that defendants should have realized that the *Peltier* case merely clarified existing law that routine immigration stops were "always" illegal and hence the officers' reliance on prior Ninth Circuit law was misplaced. Plaintiff seems to be saying on one hand the defendants should have known better than to rely on Ninth Circuit law and on the other hand they should have anticipated what the Ninth Circuit would do and should have relied on the anticipated ruling.

Prior to the Supreme Court decision in *Almeida-Sanchez* the Ninth Circuit had long recognized the right of Immigration officers, pursuant to Title 8, United States Code, Section 1357 and 8 C.F.R. 287.1(a)(2), to stop and investigate vehicles for concealed aliens within a hundred miles from any external boundary without a showing of probable cause. United States v. Miranda, 426 F.2d 283 (9th Cir. 1970). See also Almeida-Sanchez v. United States, 413 U.S. 266 at 278 and 298, 93 S.Ct. 2535, 37 L.Ed.2d 596 where Justices Powell and White respectively, state the majority view of the Supreme Court that roving automobile searches in border regions have been consistently approved by the judiciary.

Judge Walsh of this Court also recognized that these searches were consistently upheld by the Ninth Circuit (See Exhibit 1). In addition, Agent Hamilton stated in his affidavit (Exhibit 4) that he had appeared in Court on numerous occasions involving cases factually similar to that of the plaintiff's and had been advised by the Court that his conduct was legal.

■ If the Judges of the Ninth Circuit and the Justices of the Supreme Court cannot have consensus of opinion about the state of the law governing

validity of roving patrol stops and searches prior to *Almeida-Sanchez* and *Peltier*, after much deliberation, it would be utterly ludicrous and a clear miscarriage of justice to hold that Border Patrol officers or agents unschooled in the law and rules of legal interpretation must be charged with knowledge of the state of the law governing such matters. As a matter of law the officers here cannot be held to have known the law enunciated by *Almeida-Sanchez* and *Peltier* even prior to those decisions.

■ From the foregoing it is obvious that defendants had good reason to rely on the state of the law as it existed at the time of the acts in question. Further, from the principle enunciated in Pierson v. Ray, *supra* and Slate v. McFetridge, *supra,* such reliance is a good and legitimate defense to a subsequent suit for damages where that subsequent suit is based on the unconstitutionality of the prior law.

■■ The second reason for granting summary judgment in this case is that under the principle announced in *Bivens* the defendants have a valid defense in this action for money damages. Although the Ninth Circuit still follows the official immunity doctrine, it may be that it eventually will adopt the holding in *Bivens.* Under *Bivens* it is a defense to an action such as the present one if the officers acted in good faith and with a reasonable belief in the validity of the arrest and search and with a reasonable belief in the necessity for carrying out the arrest and search in the manner the arrest was made and the search was conducted. Thus, the identical standard applied in *Pierson* is to be applied in civil rights claims against federal officials based on the fourth amendment. Since the fourth amendment cause of action is analogous to one based on Section 1983, it is important that the legal standards applied be consistent. Brubaker v. King, 505 F.2d 534 (7th Cir. 1974).

The reasonable man standard to be applied in tort actions against governmental agents is less stringent than the definition of probable cause applied in criminal procedures. Judge Lumbard emphasized in his concurrence in *Bivens* that:

". . . federal officers cannot be expected to predict what federal judges frequently have considerable difficulty in deciding and about which they frequently differ among themselves. It would be contrary to the public interest if federal officers were held to a probable cause standard as in many cases they would fail to act for fear of guessing."

The question to be determined on summary judgment is whether the facts as shown by defendants' affidavits, the transcript of the proceedings before Judge Walsh and the other matters of record demonstrate that there is no genuine issue of material fact and that as a matter of law the defendants in good faith had a reasonable belief that their stop, search and arrest of Morales was lawful.

■ Plaintiff contends that a genuine issue of fact exists as to the good faith of the defendants. Plaintiff alleges that the affidavit and testimony of Agent Hamilton (set forth in the transcript) demonstrate that his search was not solely for aliens. Plaintiff states that why else would Hamilton have asked plaintiff to open the hood of the car. (TR 5).

Defendant Hamilton's request to open the hood of the vehicle was proper under Miranda v. United States, *supra.* In that case a Border Patrolman was searching for aliens not lawfully admitted into the United States. For the purpose of determining whether an alien was hidden under the hood of the automobile, the patrolman requested Miranda to open the hood. The Court held that where an officer of Immigration and Naturalization Service stopped the defendants' automobile within a reasonable distance of the border to search for aliens, but discovered marijuana under the hood, the search was legal. The

marijuana found under the hood was properly admitted notwithstanding the claim that there was only a few inches between the radiator and the top of the hood so that it was inconceivable that the officer was searching for aliens.

Plaintiff also alleges that the testimony of Agent Hamilton at page 13 of the transcript sheds further light on the illegal purpose of Agent Hamilton and the necessity of having the factual issue resolved by a trier of fact:

"BY MR. KASHMAN:

"Q. Agent Hamilton, in the many years you have been in this business hasn't it also become your purpose in stopping vehicles for these routine checks to search for contraband?

"A. As a part of the search we have come upon numerous seizures of contraband, yes, sir.

"Q. So far as what you were thinking at the time you stopped this car, didn't you also consider that you were looking for possible contraband in this vehicle in the trunk?

"MR. JENNINGS: Objection, Your Honor, that is argumentative.

"THE COURT: No, he may answer.

"A. That particular circumstance does occur as a result of stopping it, not necessarily we don't find it.

"Q. And it occurred in this case?

"A. In this particular case?

"Q. Yes.

"A. I suppose it did, yes, sir."

A reasonably intelligent reading of the foregoing demonstrates it can only mean that upon stopping a vehicle for the specific purpose of searching for aliens, the particular circumstance of finding contraband does occur.

Agent Hamilton's testimony immediately preceding that portion of the transcript cited above, reveals that his sole purpose in stopping the vehicle in question was to search for illegal aliens:

"THE COURT: When you stopped the car, what was your purpose?

"A. Routine immigration check, Your Honor.

"Q. Well, routine immigration check is just words. What did you intend to do?

"A. What did I intend to do?

"Q. Yes.

"A. I intended to talk to the occupant and open the trunk of the vehicle for an immigration search.

"Q. You talk in terms of a routine immigration search. What were you looking for, what was your purpose?

"A. At that point, Your Honor, I really didn't know, that's why I stopped the car. On occasions when we have stopped vehicles going down the highway with one occupant showing, lots of times we have had more than one person in the car and you couldn't see them until you advanced to the car and checked and looked inside.

"Q. You still don't—you said you intended to look in the trunk. Open the trunk for what?

"A. To search for any person that might be hidden there. That is a standard operation as far as I am concerned.

"Q. I know that but *I am trying to get something on the record as to your purpose.* Are you telling me you intended to look in the trunk and look in the vehicle for anybody that might be illegally in the country?

"A. Yes, sir." (TR 11–12) (Emphasis added)

Defendants have filed affidavits which set out in full detail the facts which led to the search in this case. The affidavits affirmatively establish that the defendants acted both reasonably and in good faith. See, Tritsis v. Backer, 501 F.2d 1021 (7th Cir. 1974). In addition, throughout the proceedings before Judge Walsh, Agent Hamilton consistently maintained that he stopped the vehicle in question to search for illegal aliens.

Thus, the record as a whole raises no *genuine* issue of fact as to defendants' good faith or reasonable belief.

It is ordered that defendants' Motion to Dismiss, is denied. Defendants' Motion for Summary Judgment, is granted.