UNITED STATES of America ex rel. Felix CABAN, Petitioner,

v.

Charles ROWE, Director of Illinois Department of Corrections, et al., Respondents.

No. 77 C 3979.

United States District Court, N. D. Illinois, E. D.

April 14, 1978.

Thomas Peters, Murphy, Putnick, Peters & Davis Ltd., Chicago, Ill., for petitioner.

William J. Scott, Atty. Gen., State of Illinois, Chicago, Ill., for respondents.

### Memorandum

LEIGHTON, District Judge.*

This petition for a writ of habeas corpus, and respondents' motion to dismiss, require the court to determine whether *United States ex rel. Baker v. Finkbeiner,* 551 F.2d 180, a 1977 ruling by the Seventh Circuit Court of Appeals, is a decision that has retroactive application. The issue presented is whether *Baker* declared a new rule of law or merely followed legal principles which were well known and established.

### I.

The facts in *Baker v. Finkbeiner* disclose that on January 24, 1974 Theodore Baker, in accordance with a plea agreement, pled guilty in the circuit court of Will County, Illinois to a charge of armed violence and one that he had violated the Hypodermic Syringes Act. The punishment in Illinois for violation of the armed violence statute was imprisonment of one to three years, followed by two years of mandatory parole; and for violation of the Hypodermic Syringes Act, a maximum of one year. The trial judge ratified Baker's plea agreement; and accordingly sentenced him to concurrent terms of one to two years for armed violence; one year for violation of the Hypodermic Syringes Act. However, neither he, defense counsel, nor the prosecution attorney, told Baker that in addition to the sentences imposed, he had to serve two years on parole after his terms of imprisonment.

Baker served eight months of his sentence, was credited with two months of jail time, and on September 23, 1974 was released on parole. On November 17, 1974, he was charged with and later, on March 3, 1975, declared a parole violator. While in prison on this status, he filed a petition for writ of habeas corpus in this court, claiming that not having been informed of the mandatory two-year parole term when he pled guilty, his being in custody on the authority of that parole deprived him of due process of law. The district court denied the petition, and Baker appealed.

In the court of appeals, the state argued that an earlier decision of the Seventh Circuit, *Bachner v. United States,* 517 F.2d 589 (7th Cir. 1975), barred Baker's attack on the validity of his guilty plea because he could not demonstrate that the mandatory parole would have deterred him from pleading guilty, or the two-year parole was a factor so insignificant that even if he had been informed of it, he would not have refused to plead guilty.

The court rejected this argument; and in doing so, it relied on *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969) and *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971).

* The court acknowledges, with gratitude, the valuable assistance it has received in the preparation of this Memorandum from Stewart Weltman, a third year student in The John Marshall Law School of Chicago. During this academic year, Mr. Weltman has served, without pay, as an Extern in this Chamber; and the quality of his work reflects the fine legal education he has received and his potential as he prepares to enter our profession.

*Boykin* was a case in which the United States Supreme Court held that a guilty plea in a state criminal trial waives several federal constitutional rights: (1) the privilege against self-incrimination guaranteed by the Fifth Amendment; (2) the right to trial by jury; and (3) the right to confront one's accusers. In the court's view, " . . . [w]hat is at stake . . . demands the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequences." 395 U.S. 238 at 243–244, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274. *Santobello* was a case in which it was held that the interests of justice and appropriate recognition of the prosecution's duties concerning promises made in negotiating guilty pleas will best be served either by specific performance of the guilty plea agreement, or by allowing the accused to withdraw his plea of guilty. Relying on these principles, the Seventh Circuit concluded that the taking of Baker's plea by the Illinois trial judge without telling him that in addition to the terms to which he had agreed there was an additional two-year mandatory parole was a denial of due process of law. Going further, the court held that since by serving his sentence Baker had performed his side of the plea bargain, fundamental fairness demanded that the state be compelled to adhere to the agreement as well. Accordingly, it ordered Baker released from custody. 551 F.2d 180 at 184.

## II.

The facts of this case[1] disclose that on November 24, 1974, petitioner Felix Caban appeared before the circuit court of Cook County and plea bargained for a sentence of four years to four years and a day for an armed robbery he committed in 1972. The trial judge in open court ratified the plea bargain, saying that he was going to impose the sentence petitioner had agreed to serve. At the time of petitioner's offense, Illinois law provided that imprisonment for armed robbery was a minimum of five years with a maximum of any number of years; at the time of his sentence, because of a statutory change that became effective January 1, 1973, the minimum term of imprisonment in Illinois for an armed robbery conviction was four years with a maximum of any number of years, plus a five-year mandatory parole term.[2] When he was sentenced, neither the trial judge, his lawyer, nor the prosecuting attorney told petitioner that, in addition to the time he had agreed to serve for his offense, there was to be five years of parole. Petitioner has served his sentence; but he is now in respondents' custody as a parole violator, that parole about which he was ignorant when he pled guilty. In this petition and a supporting memorandum, he alleges, citing *Baker v. Finkbeiner,* that since he was not told about the mandatory parole, his guilty plea was involuntary, and his being deprived of liberty by respondents on authority of that parole denies him due process of law guaranteed by the Fourteenth Amendment to the United States constitution. Respondents, in their motion to dismiss, contend that *Baker* was decided in 1977; petitioner was sentenced in November 1974; therefore, that case should not be given retroactive application because it declared a rule of law that was unknown to Illinois sentencing judges. Petitioner meets this contention with the argument that *Baker* did not declare a new rule of law; it merely applied legal principles which were well known, and well established.[3]

1. Since respondents have moved to dismiss, petitioner's allegations will be assumed to be true. *United States ex rel. Rooney v. Ragen,* 158 F.2d 346 (7th Cir. 1947), *cert. denied* 331 U.S. 842, 67 S.Ct. 1532, 91 L.Ed. 1853; *Williams v. Estelle,* 416 F.Supp. 1073 (D.C.Tex. 1976).

2. *See* Ill.Rev.Stat.1971, ch. 38, § 18–2, *compare* Ill.Rev.Stat.1973, ch. 38, § 1005–8–1(e)(1). It is clear, therefore, that the 1973 change in Illinois law increased the possible punishment for armed robbery by the requirement that the sentenced defendant, in addition to the term of imprisonment imposed, serve a mandatory five-year parole.

3. The court will dispose of this controversy on the issue thus raised. However, it acknowledges petitioner's contention that application of

### III.

In *Linkletter v. Walker,* 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), the Supreme Court decided that *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) was not a retroactive decision. With this ruling the Court started a trend of refusing retrospective application to new constitutional standards in criminal cases.[4] This trend led to *Halliday v. United States,* 394 U.S. 831, 89 S.Ct. 1498, 23 L.Ed.2d 16 (1969), in which the Court said that there are three considerations to be weighed when, in a given case, the issue of retroactivity is present: "(1) the purpose of the new rule; (2) the extent of reliance upon the old rule; and (3) the effect retroactive application would have upon the administration of justice." 394 U.S. at 832, 89 S.Ct. at 1499. However, before these considerations are activated and applied, it must be determined whether in fact the decision creates a new rule of law. If it does, the issue of retroactivity must be resolved; if it does not, no issue of retroactivity is present.

The first reference to this "new rule threshold test" is found in Mr. Justice Stewart's dissent in *Milton v. Wainwright,* 407 U.S. 371, 381–82 n.2, 92 S.Ct. 2174, 2180, 33 L.Ed.2d 1 where he said that "[a]n issue of the retroactivity of a decision of this Court is not even presented unless the decision in question marks a sharp break in the web of the law. The issue is presented only when the decision overrules clear past precedent, . . . or disrupts a practice long accepted and widely relied upon . . . ."[5] This test was applied in the Ninth Circuit in *United States v. Petier,* 500 F.2d 985 (9th Cir. 1974) when it concluded that *Almeida-Sanchez v. United States,* 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973) was retroactive since the case, as the Ninth Circuit saw it, neither " . . . overruled past precedent of the Supreme Court nor disrupted long-accepted practice . . . rather, it reaffirmed well-established Fourth Amendment standards . . . ." 500 F.2d at 988. Thus, the court of appeals granted relief to the defendant before it because it thought the case it was construing represented Fourth Amendment principles never deviated from by the Supreme Court. 500 F.2d at 989.

The Supreme Court disagreed with the Ninth Circuit in *United States v. Peltier,* 422 U.S. 531, 95 S.Ct. 2313, 45 L.Ed.2d 374 (1975), not because there was error in determining whether the new rule threshold test applied; but because, in the opinion of the Supreme Court, *Almeida-Sanchez* pronounced a new constitutional doctrine. It is worth noting, however, that Mr. Justice Brennan objected to the majority's holding on the ground that *Almeida* " . . . presents no question of [retroactivity; it] applied familiar principles of constitutional adjudication announced 50 years ago." 422 U.S. at 544, 95 S.Ct. at 2321.

From these cases, the guidelines for determining when new doctrine is pronounced can be discerned. A decision is not a new rule unless it clearly overrules past precedent, or disrupts a practice long accepted and widely relied upon. If a decision does not overrule past precedent, the factor to be weighed in determining if it disrupts a long practice is whether there is " . . . an avulsive change [in] the current of the law." 422 U.S. at 544, 95 S.Ct. at 2321.

When these principles are applied to *Baker v. Finkbeiner,* it becomes apparent

---

the 1973 increased punishment for armed robbery to an offense committed in 1972 is ex post facto and unconstitutional. Although this contention has merit, it is unnecessary to discuss it in view of the disposition the court makes of this case.

**4.** Until *Linkletter* the Supreme Court had always applied new constitutional criminal procedure decisions retroactively. *See Linkletter v. Walker,* 381 U.S. at 628, n. 13, 85 S.Ct. 1731; Note, *Applications of the "New Rule" Thresh-*

*old Test Before Determining the Retroactivity of Almeida-Sanchez,* 53 Tex.L.Rev. 586, 587–588.

**5.** The process by which it is determined whether a decision has created a new rule of law has been coined the "new rule threshold test." See, Note, *Applications of the "New Rule" Threshold Test Before Determining the Retroactivity of Almeida-Sanchez,* 53 Tex.L.Rev. 586 (1975).

that the Seventh Circuit Court of Appeals merely followed the constitutional law announced by the Supreme Court in *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1968) and in *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). Consequently, no issue of retroactivity is present when this court is asked to decide whether *Baker,* a 1977 decision, has application to a case that arose in 1974. The decision did not overrule any past precedent; it did not disrupt a practice long accepted and widely followed. In fact, it could possibly affect only those cases whose operative facts occurred between 1973 and 1975.[6] Obviously, it was during this short, two-year period that Illinois trial judges fell into the practice of sentencing plea-bargain defendants without telling them, when it was applicable, that the sentence to be imposed carried with it a mandatory parole.

█ For these reasons, respondent's motion to dismiss the petition for writ of habeas corpus is denied. And since the record of petitioner's change of plea shows he was never advised about the five-year mandatory parole, deprivation of his liberty on authority of that parole denies him due process of law. *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1968); *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971); *United States ex rel. Baker v. Finkbeiner,* 551 F.2d 180 (7th Cir. 1977); *see United States ex rel. Ferris v. Finkbeiner,* 551 F.2d 185 (7th Cir. 1977). Therefore a writ of habeas corpus will issue, directing that respondent forthwith release petitioner from custody. *Palermo v. Oswald,* 412 F.Supp. 935 (D.C.N. Y.1976), aff'd 545 F.2d 286 (2 Cir.); *United States ex rel. Codarre v. Gilligan,* 363 F.2d 961 (2d Cir. 1966).

---

**6.** Mandatory parole became part of Illinois law in 1973. See Ill.Rev.Stat. ch. 38, § 1005–8–1(e)(1) (1973). In 1975, the Supreme Court of the state held that as a requirement of due process trial judges had to admonish defendants, if it were applicable, that the sentence to be imposed after a plea of guilty was subject to a mandatory parole. *See People v. Wills,* 61 Ill.2d 105, 330 N.E.2d 505.